656 F.2d 578
 2 Employee Benefits Ca 1689
 Edward A. SALAZAR, Nicholas J. DeLollis, Alfred J. Quant,
Rudolph J. Walter, Individually, and as Class
Representatives, Plaintiffs-Appellants,
v.
SANDIA CORPORATION, a corporation, and Prudential Insurance
Company of America, a corporation, Individually,
and as Trustees, Defendants-Appellees.
Joseph S. MILLER and James E. McGovern, Individually, and as
Class Representatives, Plaintiffs-Appellants,
v.
SANDIA CORPORATION, a corporation, and Prudential Insurance
Company of America, a corporation, Individually,
and as Trustees, Defendants-Appellees.
 Nos. 79-2144, 79-2145.
 United States Court of Appeals,
Tenth Circuit.
 Argued March 19, 1981.
Decided Aug. 3, 1981.
 
 Robert J. Nordhaus of Nordhaus, Haltom & Taylor, and James F. Beckley of Moses, Dunn, Beckley, Espinosa & Tuthill, Albuquerque, N. M. (John P. Viebranz of Moses, Dunn, Beckley, Espinosa & Tuthill, Albuquerque, N. M., with them on the brief, Donald P. Rothschild, Washington, D. C., of counsel), for plaintiffs-appellants.
 C. Douglas Floyd of Pillsbury, Madison & Sutro, San Francisco, Cal. (Noble K. Gregory and Dennis K. Bromley of Pillsbury, Madison & Sutro, San Francisco, Cal., and Charles L. Saunders, Jr. of Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, N. M., with him on the brief, Pillsbury, Madison & Sutro, San Francisco, Cal., and Rodey, Dickason, Sloan, Akin & Robb, P. A., Albuquerque, N. M., of counsel), for defendant-appellee Sandia Corp.
 Charles C. Ivie of Gibson, Dunn & Crutcher, Los Angeles, Cal. (Samuel O. Pruitt, Jr. and Nancy P. McClelland of Gibson, Dunn & Crutcher, Los Angeles, Cal., and Allen C. Dewey, Jr. of Modrall, Sperling, Roehl, Harris & Sisk, Albuquerque, N. M., with him on the brief), for defendant-appellee The Prudential Insurance Co. of America.
 Before SETH, Chief Judge, and BARRETT and DOYLE, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 This appeal concerns the Pension Fund Plan of Sandia Corporation as it existed before changes were made in it in 1975, and the changes then made. It is only necessary to describe those portions of the Plan pertinent to the issues raised on appeal.
 
 
 2
 Before the 1975 changes employee contributions were mandatory. Sandia Corporation also contributed. The investment of the fund so created was managed by Prudential Insurance Company of America under a management contract with Sandia.
 
 
 3
 The pre-1975 Plan provided for retirement benefits computed on average earnings over an extended period, multiplied by a percentage figure, multiplied by years of service. Fixed annuities would be provided on retirement. In 1957 an option was added whereby the employee could have some of his retirement benefits allocated to a group variable annuity fund managed by Prudential and the balance in a fixed group annuity. The Plan at all pertinent times expressly provided for amendments.
 
 
 4
 In 1975 the Plan was changed to eliminate the theretofore required employee contribution leaving Sandia as the only contributor. The formula for computing retirement benefits was changed to provide the earnings figure as the highest five years, and again multiplied by the percentage figure and again by the years of service. The highest five-year element resulted in substantially larger benefits. With the change the fund balances remained the same; that is, they were carried over under the new Plan. These funds included employee contributions made under the pre-1975 Plan. The portion allocated to the group variable annuity fund was merged into the general balances.
 
 
 5
 The option to come under the new Plan required that the employees relinquish the variable annuity units which had theretofore accrued. This the plaintiffs did to obtain the increased benefits. Under the old or new Plan employees on termination could always elect to have their contributions returned with interest. The fixed group annuity method continued as part of the Plan through the 1975 change and became the only method as the variable annuity option ended. In this respect the Plan reverted to the pre-1957 method.
 
 
 6
 With the 1975 changes the benefits remained fixed by an earnings-percentage-service formula, as mentioned. The amount which the employees contributed never had a relationship to the retirement benefits under any variation of the Plan. Thus we will at least initially refer to the Plan as a "defined benefit plan."
 
 
 7
 It must again be mentioned that with the 1975 change the plaintiffs, had they wished to do so, could have continued under the old Plan. They had the choice. It was obvious that the new Plan would not include employee contributions and the fund would remain unchanged.
 
 
 8
 The plaintiffs' basic claim is that the amounts which they contributed during the period of required employee contributions should be returned to them. They acknowledge that they converted to the 1975 Plan, and no demand is made that their benefits should revert to the pre-1975 levels. They want to stay with the choice they made as to the increased benefits but seek something in addition.
 
 
 9
 The plaintiffs assert that Sandia committed a breach of duty under the Employee Retirement Security Income Act of 1974 (29 U.S.C. § 1104(a)(1)). This breach is asserted to have resulted from the failure to return contributions, a forfeiture of vested rights in the termination of variable annuity units, and that the 1975 change was a partial termination of the Plan. Other claims are made including a violation of the Securities and Exchange Acts and Rule 10b-5 in the handling of the variable annuity options.
 
 
 10
 The plaintiffs in their brief assert that regardless of the remedy a court could fashion "the Plaintiffs' rights to the remedy are legally and equitably based on violations of ERISA." The Act in section 404(a) (29 U.S.C. § 1104(a)) requires that contributions be used by the fiduciary for "benefits to participants and their beneficiaries," and reasonable administrative expenses. There is nothing in the record to show that the funds were used for any other purposes. Sandia was and is required to provide whatever may be necessary to pay all retirement benefits described in the Plan. The benefits are provided for in the Plan by the pay level-percentage-years of service formula. See 29 U.S.C. § 1002(24), (34).
 
 
 11
 The plaintiffs under the Plan had, and have, a right to retirement benefits but they do not have rights to particular contributions and never did. See Eaves v. Penn, 587 F.2d 453 (10th Cir.), and Riley v. MEBA Pension Trust, 570 F.2d 406 (2d Cir.).
 
 
 12
 The plaintiffs argue that there was a forfeiture of their variable annuity rights by the 1975 change. However, it is clear that they were provided a choice, when the change came about, to continue under the old Plan, with the option for variable annuities, or to come under the new Plan. They chose to make the change and for a fixed annuity plan gave up the variable annuity option they had. This choice was for greater overall benefits. If the amendments of ERISA as to vesting are of any consequence they were not effective until after the 1975 changes.
 
 
 13
 The plaintiffs urge another point under ERISA. That is that there was a partial termination by the 1975 change. However, we find nothing which approaches a termination contemplated by 29 U.S.C. § 1344(a). It is apparent from the record that the basic Plan continued to function as before. The funds were unchanged, employees continued to participate, and Sandia continued to make its contributions. The allocation of Plan assets under 29 U.S.C. § 1344(a) is not designed to provide a remedy as here sought.
 
 
 14
 As indicated at the outset, the plaintiffs assert that their rights are based on ERISA. This they must do in view of the agreed changes to the new Plan (and S.E.C. Rule 10b-5).
 
 
 15
 We have considered the claims based on the Labor Management Relations Act and find them to be without merit. The plaintiffs are not unit members and the union agreed to the 1975 change. The employees had no vested rights at the time under the Plan which were not protected.
 
 
 16
 The plaintiffs urge that under the Plan they had interests which were securities, and with the change Sandia did not make adequate disclosure before plaintiffs agreed to the changes. Thus they assert this was a violation of Rule 10b-5. It is apparent that the compulsory nature of the employee contributions before 1976 is a significant factor in an examination of this issue. It also appears from the record that the variable annuity portions of plaintiffs' retirement benefits under the pre-1975 Plan were funded only by employer contributions.
 
 
 17
 "The Eckman Affidavit, P 8, attached as an exhibit to Prudential's response to plaintiffs' brief in opposition to defendants' motions for summary judgment, filed February 9, 1979, establishes that the variable annuity options were purchased solely with employer contributions except in a few rare cases not pertinent to plaintiffs' claims. The Eckman Affidavit is unrebutted by plaintiffs and thereby constitutes a material fact not in issue."
 
 
 18
 There is an absence of an investment decision under these circumstances, and no payment or value provided by the plaintiff-employees.
 
 
 19
 The "profits" in this pension fund management, the increases in the fund, do not come primarily from fund management but instead from employer contributions. See S.E.C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244. Under the Plan Sandia is required to provide sufficient funding. If the Plan is in some way terminated with balances remaining these would go to the federal government not to Sandia.
 
 
 20
 The plaintiffs urge that the relinquishment of variable annuity of option was itself an investment decision, but even so it can hardly be considered as a "sale" of securities.
 
 
 21
 The plaintiffs seek no remedy contemplated by the securities acts since they do not wish to return to the old Plan. They do not seek a return of the variable annuity portion in a plan. Again, they seek a return of their contributions in addition to their new retirement benefits. The remedy sought has no relation to the securities acts.
 
 
 22
 In S.E.C. v. Variable Annuity Co., 359 U.S. 65, 79 S.Ct. 618, 3 L.Ed.2d 640, the Court considered an action to require registration under the Securities Act of 1933 before offers were made to sell variable annuities, and the exclusions in the Act. The basic issue was whether the annuities were "insurance." The Court held that the annuities were not insurance for the purpose of the exclusions, and were securities so as to require registration. The majority opinion centers on the insurance aspect while the concurring opinion gives greater consideration to the securities aspect. The case concerned after all a direct sale of an annuity to an "investor" as the Court describes the purchaser. The whole purpose of the "sale" transaction was an investment.
 
 
 23
 The variable option aspect of the pre-1975 Plan and the units therein provided must be considered in context. The contrast with the sale in S.E.C. v. Variable Annuity Co. is apparent. The Court in Teamsters v. Daniel, 439 U.S. 551, 99 S.Ct. 790, 58 L.Ed.2d 808, notes the relative significance of the retirement benefit plan and the regular pay received by the employees. The Court of this said in Daniel after considering a number of decisions:
 
 
 24
 "In every case the purchaser gave up some tangible and definable consideration in return for an interest that had substantially the characteristics of a security.
 
 
 25
 "In a pension plan such as this one, by contrast, the purported investment is a relatively insignificant part of an employee's total and indivisible compensation package. No portion of an employee's compensation other than the potential pension benefits has any of the characteristics of a security, yet these noninvestment interests cannot be segregated from the possible pension benefits. Only in the most abstract sense may it be said that an employee "exchanges" some portion of his labor in return for these possible benefits. He surrenders his labor as a whole, and in return receives a compensation package that is substantially devoid of aspects resembling a security. His decision to accept and retain covered employment may have only an attenuated relationship, if any, to perceived investment possibilities of a future pension. Looking at the economic realities, it seems clear that an employee is selling his labor primarily to obtain a livelihood, not making an investment."
 
 
 26
 In the case before us the contributions by employees under the Plan were required but, as indicated, employee contributions were not used, only those of Sandia. The employees made no investment decision under these circumstances.
 
 
 27
 In Daniel the Court concluded that the noncontributory compulsory pension plan there concerned did not meet the definition of a security described in S.E.C. v. W. J. Howey Co., 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244, and United Housing Foundation, Inc. v. Forman, 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621. We must here reach the same conclusion and hold that the variable annuity aspect of the Plan before us was not a "security."
 
 
 28
 The Ninth Circuit in Black v. Payne, 9 Cir., 591 F.2d 83, considered the issue as to a compulsory employee contributory plan. It concluded that in that pension plan, and apparently in a typical pension plan, "the reasonable expectation of entrepreneurial profit is absent." This expectation was there considered to be the more important of the two factors in Howey. The S.E.C. apparently has taken the position that the significant factor is whether the plan is voluntary or not. (See S.E.C. Release No. 33-6188). But, in any event, if not both voluntary and contributory the plan cannot be a security.
 
 
 29
 The appellants made no requests for additional time for discovery either before or after the motion for summary judgment was filed, and in fact appellants took no depositions. They were provided a large number of documents by Sandia. Appellants are not in a position to here complain that they should have had more time for depositions.
 
 
 30
 As we have indicated above, the several issues raised were purely matters of law, and no unresolved fact questions remained. We must hold that the case was a suitable one for summary judgment.
 
 
 31
 AFFIRMED.