UNITED INDEPENDENT FLIGHT OFFICERS, INC., et al., Plaintiffs,

v.

UNITED AIR LINES, INC. and Air Line Pilots Association, International, Defendants.

No. 82 C 3066.

United States District Court, N.D. Illinois, E.D.

Oct. 6, 1983.

[redacted]

---

Raymond C. Fay, Haley, Bader & Potts, Chicago, Ill., for plaintiffs.

Robert H. Brown, Michael B. Erp, Katz, Friedman, Schur & Eagle, Edward L. Foote, Duane M. Kelley, Deborah G. Haude, Columbus Gangemi, Jr., Winston & Strawn, Chicago, Ill., for defendants.

MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiffs, United Independent Flight Officers, Inc., and certain of its members, William J. Plank, L. Frank Murphey, Thomas C. Cook, N. Wayne Hughes, Jack W. Parshall, H. Harvey Hunter, Harry J. Langosh, George Norwood, Robert M. Schisler and LeRoy A. Shaver, have filed this action against United Air Lines ("United") and the Air Line Pilots Association, International ("ALPA") pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.* ("ADEA") and the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.*, as applied to air carriers under 45 U.S.C. § 181. Presently pending before the Court are plaintiffs' motion for class certification and ALPA's and United's motions for summary judgment. For reasons set forth below, plaintiffs' motion for class certification is denied. United's and ALPA's motions for summary judgment are granted.

*Facts*

The named plaintiffs are members of UIFO, an organization comprised of current and former United employees who were or have been pilots. All of the named plaintiffs except Murphey are retired from United. The subject matter of the present litigation is a pension plan known as the United Air Lines, Inc. Pilots' Fixed Benefit Retirement Income Plan, effective January 1, 1976 ("the plan"), which is incorporated into the collective bargaining agreement between United and ALPA. The present plan was preceded by a voluntary fixed benefit plan which was in effect from January 1, 1941, through December 31, 1964 ("the pre-1965 plan"). In this employee-contributory plan, participation was voluntary; participation credit was not given for periods during which a pilot chose not to contribute.

On January 1, 1965, United undertook to fund the plan completely. Prior employee contributions, however, were not refunded. For employees who began working for United after January 1, 1965, the number of years of participation in the plan is the same as the number of years of service minus one, since participation in the post January 1, 1965, fixed plan became automatically effective after a year of continuous employment. Participation credit of years before 1965 remained dependent upon whether the pilot was eligible to participate and had chosen to make voluntary contributions.

In early 1972, United and ALPA agreed to change the benefit accrual formula used to calculate annual retirement income under the post January 1, 1965, plan. The number of years of participation in United fixed benefit plans was multiplied by 1.2% (later 1.25% and presently 1.3%) times "final average earnings." (Final average earnings are one-fifth of the earnings on the sixty consecutive months of a participant's last 120 months of employment with United which produce the highest sum). For pilots hired since January 1, 1965, their years of service minus one equals years of participation, but for many pilots employed by United from 1941 through 1964, years of service minus one are not the same as years of participation for purposes of the benefit accrual formula under the present plan. Thus, with regard to pilots hired between 1941 and 1965, the amount of retirement

benefits would vary according to the extent of a pilot's voluntary participation in the Original Fixed Plan.

Plaintiffs seek to credit all plan participants with all of their years of service with United minus one, claiming that pilots hired prior to 1965 were never given notice that failure to participate continuously in the pre-1965 plan would adversely affect their retirement benefits. Plaintiffs also want a refund of all voluntary contributions made under the pre-1965 plan. They have moved to certify claims under Counts I, II and IV as a class action pursuant to Fed.R.Civ.P. 23. Class certification is not available for Count III, which is brought pursuant to the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq.*[1] Additionally, plaintiffs seek certification with respect to two subclasses

(1) All pilots hired by United Air Lines, Inc. before January 1, 1965 and who did not participate in the original fixed pension benefit plan on a continuous basis and who either retired after January 1, 1976 or are still working for United.

(2) All pilots who ever made contributions into the original fixed plan and who retired after January 1, 1976.

### I. The Motion for Class Certification

A plaintiff has the burden of proving that a case is appropriately a class action and fulfills all of the requirements in Fed. R.Civ.P. 23. *Valentino v. Howlett,* 528 F.2d 975, 978 (7th Cir.1976). A trial court has broad discretion in determining whether a class action may be maintained and whether subclasses should be created as well. *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1129 n. 38 (7th Cir.1979), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). A decision of a district court as to class representative satisfaction of Rule 23 prerequisites will only be set aside for abuse of discretion.

*Patterson v. General Motors Corp.,* 631 F.2d 476, 480 (7th Cir.1980), *cert. denied;* 451 U.S. 914, 101 S.Ct. 1988, 68 L.Ed.2d 304 (1981). In resolving the instant motion, class certification is a procedural matter, and we are not to consider the merits of the case. *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923–24, 66 L.Ed.2d 842 (1981). *See also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). It is with these standards in mind that we turn to the question of whether plaintiffs have met the requirements of Fed.R.Civ.P. 23.

Rule 23(a) contains four prerequisites to bringing a suit as a class action:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

### 1. Numerosity

Plaintiffs assert that over two thousand current and retired United pilots are members of the proposed class, and that joinder is therefore impracticable. Defendants argue, *inter alia,* that since only approximately two hundred persons have chosen to "opt in" to the ADEA count, joinder is indeed practicable. They add that the crucial inquiry under Rule 23(a)(1) is the practicality of joinder, which requires consideration of the size of the class, ease of identifying its members and their addresses, ease of service and geographic dispersion. These factors are indeed relevant. *Garcia v. Gloor,* 618 F.2d 264, 267 (5th Cir.1980), *cert. denied,* 449 U.S. 1113, 101 S.Ct. 923–24, 66 L.Ed.2d 842 (1981); 3 B Moore's Federal Practice ¶ 23.05 (2d ed. 1979). We believe,

---

1. 29 U.S.C. § 626(b) incorporates section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b), which provides, in pertinent part, that:

Action to recover such liability may be maintained in any court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

however, that plaintiffs have satisfied the numerosity requirement of Rule 23(a)(1). It is undisputed that 1,500 to 1,800 pilots contributed to the benefit plan prior to 1965. Moreover, the class members are widely dispersed geographically. Finally, the individual claims of certain class members may be too small to warrant individual actions, since participation in the benefit plan prior to 1965 varied widely among plaintiffs. This is a factor to be considered when examining the practicability of joinder. *Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1333 n. 9 (7th Cir.1969).

### 2. *Commonality*

This factor requires us to consider whether there are questions of law or fact common to the class. The Seventh Circuit has observed that such an inquiry is ordinarily not a difficult matter. *Eggleston v. Chicago Journeymen Plumbers, Local Union No. 130,* 657 F.2d 890, 895–96 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). We agree with plaintiffs that there are several common issues in the present matter, both factual and legal. All members of the proposed class are or were pilots and members of the pilot fixed benefit plan. While damages may vary among class members, the benefit accrual formulas involved in this matter may have adversely affected all class members. Differences in the amount of damages suffered by members of a class are not a reason to deny class certification. *Evans v. City of Chicago,* 522 F.Supp. 789, 806 (N.D.Ill.1980), *aff'd in part, vacated in part,* 689 F.2d 1286 (7th Cir.1982). Plaintiffs raise common issues of law under § 204(b)(1) and § 404(a) of ERISA, as well as the question of whether ALPA breached its duty of fair representation under the Railway Labor Act, 45 U.S.C. § 181 *et seq.* We thus conclude that there are issues of fact and law common to the members of the class.

### 3. *Typicality*

The third prerequisite for class certification is that the claim of the representative parties be typical of the claims of the class. We must therefore decide whether the named representatives' claims have the same essential characteristics as the claims of the class at large; this requirement may be satisfied notwithstanding factual distinctions between the claims of the named plaintiffs and those of other class members. *DeLaFuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225 at 232 (7th Cir. 1983). A named plaintiff's claim is typical if it arises from the same event or course of conduct giving rise to the claims of other class members and his or her claims are based on the same legal theory. *Resnick v. American Dental Assn.,* 90 F.R.D. 530, 539 (N.D.Ill.1981).

Defendants make several arguments challenging the typicality of the named plaintiffs vis-a-vis the class. But the fact that each pilot's case may require individual examination to determine the extent of his injury reflects a mere factual distinction and does not mean that the plaintiffs' claims lack the necessary typicality. The same result is true despite the differing degrees of voluntary participation among pilots hired before 1965. The named plaintiffs' claims are thus sufficiently typical of the claims of the class.

### 4. *Adequacy of Representation*

The final factor in Rule 23(a) requires us to consider whether the named plaintiffs will fairly and adequately protect the interests of class members not personally involved in the litigation. This requirement is perhaps the most difficult aspect of Rule 23(a) to resolve. *Eggleston v. Chicago Journeymen Plumbers, Local Union No. 130,* 657 F.2d 890, 896 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). Courts have divided this requirement into two distinct factors, the competency of named plaintiffs' counsel and the existence of any conflicts of interest between the named class representatives and members of the class. *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 2371 n. 13, 72 L.Ed.2d 740 (1982); *Susman v. Lincoln American Corp.,* 561 F.2d 86, 90 (7th Cir. 1977). Whether a party would adequately protect the interests of the class is a ques-

tion of fact depending upon the circumstances of each case. *Schy v. Susquehanna Corp.,* 419 F.2d 1112, 1116 (7th Cir.1970), *cert. denied,* 400 U.S. 862, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Moreover, a plaintiff may not maintain his or her action as a class suit when his or her interests are antagonistic to the interests of the persons he or she seeks to represent. *Hansberry v. Lee,* 311 U.S. 32, 44–45, 61 S.Ct. 115, 119–120, 85 L.Ed. 22 (1940).

Defendants have pointed to a number of possible conflicts between the named plaintiffs and other members of the proposed class which lead us to conclude that the proposed class representatives would not adequately represent the remainder of the class. First, the named plaintiffs belong to UIFO, a labor organization that is at least somewhat antagonistic to ALPA, the collective bargaining representative of United pilots, members of the putative class. We believe that plaintiffs are being disingenuous in minimizing the tension between UIFO and ALPA, tension which this lawsuit itself embodies. It is apparent from the present record that at least some class members oppose negotiation of the benefits and benefit changes plaintiffs seek. There also appears to be some merit in ALPA's argument that tension exists between members of the two subclasses. Pilots with the greatest stake in an award of past service credit, members of subclass 1, voluntarily contributed the least to the pre-1965 pension plan; while pilots with a major stake in the return of contributions, those in subclass 2, contributed the most and may not oppose the present plan formula to the same extent. While some presently active pilots have joined the ADEA count, one named plaintiff admitted in his deposition that a number of ALPA members fear that improvements in retirement benefits may come from the "pay package." There is thus a very real risk of conflict between active pilots and retired pilots.

■ Contrary to plaintiffs' assertions, we believe that differences among United pilots concerning their economic interests

with regard to benefit plans represent a substantial conflict going to the subject matter of the litigation, thus rendering class certification inappropriate. *Sperry Rand Corp. v. Larson,* 554 F.2d 868, 874 (8th Cir.1977). Plaintiffs' suggestion that pilots who do not wish to sue ALPA may simply opt out of the class is not truly responsive, for the procedures of Rule 23 should not be invoked unless a plaintiff initially meets his or her burden of showing that class certification is appropriate. *Thompson v. T.F.I. Co.,* 64 F.R.D. 140, 149 (N.D.Ill.1974). We therefore deny plaintiffs' motion to certify the class.

Our resolution of the motion under Rule 23(a) obviates the need to consider arguments pursuant to Rule 23(b), for the Rule 23(a) requirements must be satisfied in full prior to examining Rule 23(b). *Alex v. Allen,* 409 F.Supp. 379, 381 (W.D.Pa.1976); *see also, Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 163, 94 S.Ct. 2140, 2145, 40 L.Ed.2d 732 (1974).

## II. *Defendants' Motion for Summary Judgment*

### A. *ERISA: Counts I and II*

Count I of plaintiffs' complaint asserts that United and ALPA breached their fiduciary duties under § 404(a) of ERISA, 29 U.S.C. § 1104(a) as a result of the following actions:

the formulation, negotiation, operation, and continued implementation of the Current Fixed Plan, particularly the "years of participation" segment of the benefit accrual formula; the refusal to credit, as years of participation under the Current Fixed Plan, years of service with United in which voluntary contributions to the Original Fixed Plan were not made; the refusal to return voluntary contributions made under the Original Fixed Plan; the management of the contribution account with respect to the retention of the vested voluntary contributions under the Original Fixed Plan at an annual interest rate of only 3 per cent;[2] the unequal treatment given participants

---

**2.** In their complaint, plaintiffs asserted that United breached its fiduciary duty by mismanaging the contribution account with respect to

the retention of the participants' contribution at an annual rate of 3 percent. United, how-

under the Current Fixed Plan when compared to the treatment given to participants in other fixed benefit plans maintained by United, with respect to credit received for years of service with United and with respect to the return of voluntary participant contributions.[3]

As an initial matter, both defendants argue that Count I should be dismissed because it involves conduct which occurred prior to the effective date of ERISA. According to § 514 of ERISA, 29 U.S.C. § 1144

(a) Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

(b)(1) *This section shall not apply with respect to any cause of action which arose or any act or omission which occurred, before January 1, 1975.*

(Emphasis added). Defendants aver that plaintiffs' breach of fiduciary duty claims are based upon a necessary consequence of amendments to the benefit plan in 1965 when United undertook to completely fund the plan. Thus, it was settled long ago that plaintiffs' past years of service, during which they had not contributed to the original benefit plan, would not be credited to them, and that their past contributions to the plan would not be refunded to them. The breach of fiduciary claims are allegedly based upon acts or omissions before 1975 and set forth a cause of action which was complete before that date. In response, plaintiffs assert that defendants took various affirmative actions between 1975 and 1982 which constitute a cause of action under ERISA; courts do not lack jurisdiction over complaints based upon both pre-ERISA and post-ERISA conduct. Moreover, the failure to amend the benefit plan, plaintiffs argue, constitutes continuing violations of ERISA.

The change in computing the benefit accrual formula from career average earnings to final average earnings occurred in 1972, a point in time prior to the effective date of ERISA. Amendments to the benefit accrual formula in 1976, 1979 and 1982, in which the multiplier was increased, indeed heightened the disparity in retirement benefits between pre-1965 hire and post-1965 hire pilots. But the basis for the disparity remains the 1965 and 1972 changes in the benefit plan, both of which occurred before 1975. Plaintiffs also assert that the redrafting of the benefit plan to comply with ERISA in the late 1970's was an independent violation of the statute emphasizing the substantive nature of those changes. They do not, however, explain how those changes themselves have violated ERISA. Again, the basis for plaintiffs' complaint appears to have occurred prior to any changes in the benefit plan during the late 1970's. The crucial events, in our view, giving rise to plaintiffs' complaint occurred prior to ERISA's effective date.

■ We initially observe that ERISA is solely prospective. *Malone v. White Motor Corp.,* 435 U.S. 497, 499 n. 1, 98 S.Ct. 1185, 1186 n. 1, 55 L.Ed.2d 443 (1978). Acts or omissions that occurred prior to the effective date of ERISA are not controlled by the provisions of the Act. *Reuther v. Trustees of the Trucking Employees of Passaic*

ever, indicated that this 3 percent rate does not apply to plaintiffs' pension benefits, since this rate was established to determine the lump sum amount a participant could withdraw in the event of termination prior to normal retirement age. Plaintiffs conceded that they retired at the normal retirement age and have not addressed United's arguments on this point. Accordingly, defendants' motion for summary judgment on this issue is granted.

**3.** Plaintiffs presented no arguments in their memorandum opposing summary judgment in an effort to support their allegations that the different treatment of participants in the pilot benefit plan from the treatment of participants in other fixed benefit plans maintained by United violated ERISA. As United points out, nothing in ERISA requires the provision of identical benefit plans for differently-situated employee groups. Defendants' motion for summary judgment as to this aspect of Count I is therefore granted.

*and Bergan County Welfare Fund,* 575 F.2d 1074, 1078 (3d Cir.1978). The term "act or omission" under § 514(b)(1) has been defined as "those significant facts which give rise to a claim but which fall short of establishing a cause of action." *Winer v. Edison Brothers Stores Pension Plan,* 593 F.2d 307, 313 (8th Cir.1979). This clause exists to prevent past conduct of pension plan fiduciaries and contributors from being judged retroactively under the standard set forth in ERISA because the conduct generates post-ERISA consequences that give rise to an independent cause of action. *Quinn v. Country Club Soda Co.,* 639 F.2d 838, 840–41 (1st Cir.1981). A "cause of action" under this section has been defined as "a state of facts which would entitle a person to sustain an action and to seek a judicial remedy on his behalf." *Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 971 (5th Cir.1981).

■■■ As the Seventh Circuit recently observed, a party cannot rely upon pre-ERISA conduct to escape application of ERISA if the critical acts serving as the basis for the claim occurred after ERISA went into effect. *Coward v. Colgate-Palmolive Co.,* 686 F.2d 1230, 1233 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1526, 75 L.Ed.2d 948 (1983). However, the Seventh Circuit refused to adopt the argument that the continuous act of denying the Coward plaintiffs' pension benefit credits was a continuous breach of duty bringing their claim within the scope of ERISA. Plaintiffs in that case had voluntarily withdrawn from the pension plan prior to the enactment of ERISA by signing waiver cards, and the Court held that signing the waiver cards were pre-ERISA acts. To treat the company's denial of pension benefits as a continuous breach of duty would thus read out the exception contained in § 514(b)(1). *Id.* at 1234. We believe that application of a continuous violation theory in the instant matter would similarly contravene § 514(b)(1). The significant facts which give rise to plaintiffs' claim predate the enactment of ERISA, and we therefore grant defendants' motion for summary judgment as to Counts I and II of the complaint.[4]

But even if the instant matter were within this Court's subject matter jurisdiction, and barring any statutory limitation provisions, *see* note 4, *supra,* we do not believe that defendants have violated § 404 of ERISA. Section 404 of ERISA establishes a number of duties with which fiduciaries must comply.[5] For the definition of a fidu-

---

4. Defendants also assert that the statute of limitations set forth in ERISA § 413, 29 U.S.C. § 1113, bars plaintiffs' ERISA claims. We agree; this conclusion provides yet another ground for dismissing plaintiffs' claims under ERISA. Section 413 provides that

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—
(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission, the latest date on which the fiduciary could have cured the breach or violation, or
(2) three years after the earliest date (A) on which the plaintiff had actual knowledge of the breach or violation, or (B) on which a report from which he could reasonably be expected to have obtained knowledge of such breach or violation was filed with the Secretary under this subchapter;
except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

Thus, insofar as ALPA and United's failure to amend the benefit plan's accrual formula and return contributions to plaintiffs constituted a breach of their fiduciary duty under ERISA, the statute of limitations would have run at the latest three years after the effective date of ERISA's fiduciary obligations, which was January 1, 1976, 29 U.S.C. § 1114(b). Plaintiffs' actions for breach of fiduciary duty would thus be barred. It is clear that plaintiffs filed the instant action in 1982, more than three years after the earliest date that they had actual knowledge of the alleged breach.

5. Section 404 of ERISA, 29 U.S.C. § 1104, provides in relevant part that
a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
(A) for the exclusive purpose of:
(i) providing benefits to participants and their beneficiaries; and
(ii) defraying reasonable expenses of administering the plan;
(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capac-

ciary, however, we must turn to 29 U.S.C. § 1002(21), which provides, in pertinent part, that

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

■ ALPA initially asserts that it is not a fiduciary under the aforecited section, since the authority to control and manage the plan is vested in United. ALPA, according to this argument, negotiates the terms of a collective bargaining agreement with United, which imposes a duty upon United to establish the plan. However, this does not constitute authority over the management of the plan nor over its assets. In response, plaintiffs point to a statement by United in which United declared that

> it was prepared to put up the money necessary to refund contributions and grant past service credit for pre-1965 employees if that was how the pilots and their union really wanted to allocate the additional unfunded liability United was prepared to assume.

According to plaintiffs, this statement indicates that United granted ALPA full authority to dispose of $70 million of the plan's assets. But we are persuaded by ALPA's argument that the $70 million at issue here were not assets of the benefit plan. Rather, that sum represents the increase in unfunded liability which United stated it was prepared to assume, and which would have amounted to annual con-tributions to the plan of approximately $4.6 million. We do not believe that this offer by United in the context of negotiations concerning a collective bargaining agreement gave ALPA discretionary control or authority over the managements of the benefit plan, its assets or its administration. ALPA's rejection of this offer does not, in our view, render it a fiduciary under ERISA. Moreover, other courts have observed that unions neither control nor oversee an employer's contributions to a pension or benefit fund and are therefore not subject to ERISA's fiduciary standards with regard to an employee's contributions to a fund. *E.g., Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 599, n. 10 (3d Cir.1981), *cert. denied,* 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981).

■ United does not dispute its status as a fiduciary. But it joins ALPA in asserting that the amending of the benefit plan, in which the terms of the plan were changed, does not violate any of the fiduciary obligations under ERISA. Similarly, refusal to return plaintiffs' pre-1965 voluntary contributions to the pension plan does not run afoul of the statute. The Supreme Court recently emphasized that ERISA leaves pension calculation techniques subject to the discretion of pension plan designers. *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 525, 101 S.Ct. 1895, 1907, 68 L.Ed.2d 402 (1981). In fact, courts intervene in the decisionmaking processes of fiduciaries only where they have acted arbitrarily or capriciously. *Bayles v. Central States, Southeast & Southwest Areas Pension Fund,* 602 F.2d 97, 100 (5th Cir.1979). In the present case, as in *Salazar v. Sandia Corp.,* 656 F.2d 578 (10th Cir.1981), voluntary employee contributions to a benefit plan were not returned to employees after a

---

ity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter or subchapter III of this chapter.

benefit plan became completely funded by an employer. As that court observed,

> [t]he Act in section 404(a) (29 U.S.C. § 1104(a)) requires that contributions be used by the fiduciary for "benefits to participants and their beneficiaries," and reasonable administrative expenses. There is nothing in the record to show that the funds were used for any other purposes. Sandia was and is required to provide whatever may be necessary to pay all retirement benefits described in the Plan....
>
> The plaintiffs under the Plan had, and have, a right to retirement benefits but they do not have rights to particular contributions and never did.

*Id.* at 580 (citations omitted). Neither the failure to return pre-1965 voluntary contributions to the plan nor the change in the method of calculating benefits in 1972 violated the fiduciary obligations set forth in ERISA. This provides additional support for granting summary judgment as to Count I.[6]

■ According to Count II of plaintiffs' complaint, the benefit accrual formula of the plan violates § 204(b)(1) of ERISA, 29 U.S.C. § 1054(b)(1), because it limits the years of service credited to plaintiffs based upon their level of participation in the plan

prior to 1965 and applies retroactively a different benefit accrual requirement upon participants in the pre-1965 plan which is not imposed upon participants hired after 1965. Plaintiffs insist that under § 204(b)(1), the benefit accrual and vesting provisions of a plan may not differentially affect similarly-situated employee groups. Section 204(b)(1) sets the outer limits on permissible benefit accrual practices, rather than imposing mandatory benefit calculation procedures. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 512, 101 S.Ct. 1895, 1901, 68 L.Ed.2d 402 (1981). In enacting § 204(b)(1), Congress did not intend to restrict differences in the computation of benefits.

Moreover, plaintiffs are not similarly situated with respect to other pilots, for plaintiffs' years of participation in the plan vary depending on their voluntary decision to contribute to it before 1965. And section 204 does not require identical benefits for employees with different years of participation in a plan. ERISA itself allows plans to exclude both periods of service prior to age 25, 29 U.S.C. § 1052(a)(1)(A), and those periods during which an employee declines to contribute to a plan, 29 U.S.C. § 1053(b)(1)(B). Accordingly, defendants'

---

**6.** Plaintiffs further argue that the participation of middle and upper United managers in the plan violates the fiduciary obligations created by ERISA, in that it constituted self-dealing. United, in bargaining with ALPA over the terms of the plan, is affecting the benefits of its own employees. For these reasons, according to plaintiffs, an issue of fact exists concerning whether there has been a conflict of interest. Initially, we observe that ERISA does not prohibit management employees from participating in a pension plan. 29 U.S.C. § 1108(c). But additionally, we do not believe that plaintiffs have adequately supported their allegations of self-dealing by United or its employees. As the Seventh Circuit recently observed,

> [T]o create a question of fact, an adverse party responding to a properly made and supported summary judgment motion must set forth specific facts showing that there is a genuine issue for trial. A party may not rest on mere allegations or denials of his pleadings; similarly, a bare contention that an issue of fact exists is insufficient to raise a factual issue. Rule 56 of the Federal Rules of

Civil Procedure clearly requires that an adverse party set forth specific facts showing a genuine issue for trial.

*Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.1983). Accordingly, we grant United's motion for summary judgment with respect to plaintiffs' allegations of self-dealing.

Moreover, plaintiffs assert that defendants had acted arbitrarily and capriciously by granting preferences between plan participants hired before 1965 and those hired afterwards. However, they point to no examples of the abuse of discretionary authority by defendants in the administration of the plan. The cases cited in support of this proposition, moreover, involved divesting some plan participants of past service credit, to the advantage of other participants. *Esler v. IAM National Pension Fund*, 684 F.2d 648 (9th Cir.1982), and *Winpisinger v. Aurora Corp. of Illinois*, 456 F.Supp. 559 (N.D.Ohio 1978). In the instant case, plaintiffs have not been divested of past service credit, benefits nor money. Accordingly, those cases are inapposite.

motion for summary judgment on Count II is granted.

## B. ADEA

In Count III, plaintiffs assert that ALPA and United willfully violated § 4 of the Age Discrimination in Employment Act, 29 U.S.C. § 623, by adopting the years of participation formula for the benefit plan, by refusing to credit as years of participation those years when plaintiffs did not voluntarily contribute to the pre-1965 plan, by not returning any voluntary contributions, by managing the contribution account at a three percent interest rate, by treating plaintiffs differently than members of other fixed benefit plans with regard to the credit for years of service and refund of voluntary contributions, and by creating a hostile atmosphere of discrimination against older pilots. These actions, in addition to representing intentional discrimination, have had a disparate impact upon plaintiffs. In their response to defendants' motion for summary judgment, plaintiffs confine their arguments to defendants' refusal to credit as years of participation those years in which plaintiffs did not voluntarily contribute to the plan.

According to 29 U.S.C. § 623, it is unlawful for employers

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise

adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

Allegations that a facially neutral policy has disparate impact upon members of a class state a claim under the ADEA. Several courts have considered this issue and have concluded that a disparate impact theory may be used in age discrimination actions; the ADEA is not limited to remedying intentional age discrimination. *E.g.,* *Douglas v. Anderson,* 656 F.2d 528, 529, 531 n. 1 (9th Cir.1981); *Geller v. Markham,* 635 F.2d 1027, 1032 (2d Cir.1980), *cert. denied,* 451 U.S. 945, 101 S.Ct. 2028, 68 L.Ed.2d 332 (1981). *Contra,* Note, *Age Discrimination and the Disparate Impact Doctrine,* 34 Stan. L.Rev. 837 (1982). We will first consider plaintiffs' disparate impact theory before turning to their allegations of intentional discrimination.[7]

In order to present a prima facie case of discriminatory impact, a plaintiff must demonstrate that an employer's facially neutral employment practice has a disparate impact upon members of plaintiffs' class. *Griggs v. Duke Power Co.,* 401 U.S. 424, 429–30, 91 S.Ct. 849, 852–53, 28 L.Ed.2d 158 (1970). An employer may defend by showing that business necessity is the basis for the challenged practice or that the practice is a bona fide occupational qualification. *Id.* at 432, 91 S.Ct. at 854. A plaintiff, however, may attempt to show that other employment practices with less of a discriminatory effect would serve the employer's interest. *Albermarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975). We therefore

---

**7.** There is some question concerning the timeliness of plaintiffs' allegations under the ADEA. The ADEA incorporates the statute of limitations set forth in the Portal-to-Portal Act, 29 U.S.C. § 626(e). 29 U.S.C. § 255(a) provides for a statute of limitations of two years after a cause of action accrues, except for wilful violations, which have a three-year statute of limitation. UIFO filed its complaint on May 17, 1982. Count III would thus appear to be barred insofar as plaintiffs' causes of action arose prior to May 17, 1982. Plaintiffs, however, assert that these violations are continuing in nature to avoid the limitations period. Changes in the benefit plan in 1965 and 1978 are not continuing violations, but mere "events of history." *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977); *Alston v. Allegheny Ludlum Steel Corp.,* 449 F.Supp. 553 (W.D.Pa.1978). But even if plaintiffs' claims are timely, our discussion of the merits is to grant defendants' motion for summary judgment with respect to Count III.

first consider whether defendants' refusal to grant pilots hired prior to 1965 credit for all their years of service or to return pre-1965 voluntary contributions to the plan to plaintiffs has had a disparate impact upon plaintiffs.

United argues that there is no causal link between the adverse impact alleged by plaintiffs and plaintiffs' age, and that plaintiffs were not treated differently from similarly-situated employees. ALPA adds that the plan has no discriminatory impact whatsoever, for pilots hired before 1965 have had, and will have, a greater chance to accrue years of participation under the plan. Plaintiffs argue that the plan disparately impacts upon them, for the amount of nonparticipation in the plan among pilots hired after 1965 is zero, but for most pilots hired before 1965 there is a disparity between their years of active service and their participation in the plan.[8]

■ Plaintiffs have not satisfied their burden of showing a prima facie case of disparate impact in the present matter. First, we must ask what the nature of the asserted disparate impact is. *Furnco Construction Co. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). Plaintiffs seek to compare two differently-situated employee groups—pilots hired prior to 1965 and pilots hired after that year. These groups are not similarly situated but for their ages. They were hired under different terms of employment. We also do not believe that the employment terms offered to plaintiffs and other United employees prior to 1965 can be compared to the present terms of employment offered to United employees to show disparate impact. Plaintiffs would have this Court hold that an employer must provide any improvements to a pension plan retroactively to any active employees for past services. This is not, in our view, the mandate of the ADEA.

Secondly, age is not the reason for the pension plan's alleged adverse impact upon the plaintiffs. There is no nexus between the employment practice plaintiffs have challenged and their age. As the Supreme Court has observed, "[e]ven a completely neutral practice will inevitably have *some* disproportionate impact on one group or another. *Griggs* does not imply, and this Court has never held, that discrimination must always be inferred from such consequences." *City of Los Angeles Department of Water & Power v. Manhart,* 435 U.S. 702, 711 n. 20, 98 S.Ct. 1370, 1376–1377 n. 20, 55 L.Ed.2d 657 (1978). Plaintiffs do not have credit for years they did not voluntarily contribute to the plan not because of their age, but because some voluntarily chose not to contribute to the benefit plan or because they may have been ineligible to contribute at the time. In short, no material issues of fact exist concerning whether the plan has a disparate impact on plaintiffs because of age.

In an effort to support its allegations of intentional age discrimination, plaintiffs refer to another case in this district, in which United was adjudged to be in willful violation of the ADEA with respect to the employment of older pilots. *Monroe v. United Air Lines,* 31 Empl.Pract.Dec. ¶ 33,329 (N.D. Ill.1982). This litigation allegedly created a "hostile and invidious" atmosphere against older pilots, and plaintiffs' age was therefore a determining factor which made a difference in plaintiffs not receiving past service credit and the return of voluntary contributions. This issue, plaintiffs add, is incapable of resolution on summary judgment, as it raises material factual disputes concerning defendants' motives. Plaintiffs, however, have failed to present evidence or factual issues concerning the existence of intentional age discrimination in *this* case; rather, plaintiffs' arguments are based on conjecture and speculation. United, moreover, has adequately rebutted the plaintiffs' various efforts to create factual issues and

---

8. Plaintiffs do not dispute ALPA's assertion that all pilots, regardless of age, are subject to the provision of the plan whereby the contribution account is managed at a 3 percent interest rate. Plaintiffs also do not argue that the different treatment plaintiffs allegedly received

compared to members of the fixed benefit plans with regard to years of service credit and refund of voluntary contributions constituted age discrimination. Defendants are thus entitled to summary judgment with respect to these two aspects of Count III.

defeat summary judgment with respect to this issue.[9] Thus, United has met its burden of showing that "sufficient evidence supporting the claimed factual dispute does not require a jury or judge to resolve the parties' differing versions of the truth." *Hadley v. County of DuPage,* 715 F.2d 1238 at 1241 (7th Cir.1983), citing *Cedillo v. Int'l Ass'n of Bridge, etc.,* 603 F.2d 7, 9 (7th Cir.1979). Accordingly, defendants' motion for summary judgment as to Count III is granted.[10]

### C. The Duty of Fair Representation: Count IV

Count IV of plaintiffs' complaint asserts that ALPA, with United as a party, breached its duty of fair representation under 45 U.S.C. §§ 151 *et seq.* as applied to air carriers by 45 U.S.C. § 182.[11] ALPA allegedly acted arbitrarily and capriciously by (1) the misrepresentation of and failure to disclose its collective bargaining position concerning (a) amending the plan to credit pilots for years before 1965 in which they did not make voluntary contributions, and (b) the return of such voluntary contributions, and (2) the negotiation and implementation of the years of participation formula.

The duty of fair representation requires a union to serve the interests of all its members without hostility or discrimination, to exercise its discretion with good faith and honesty and to eschew arbitrary conduct. *Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 910, 17 L.Ed.2d 842 (1967). Duty of fair representation cases may involve allegations that a union breached its duty in the negotiation of a collective bargaining agreement or a charge that a union improperly administered the collective bargaining agreement. *Schultz v. Owens-Illinois, Inc.,* 696 F.2d 505, 514 (7th Cir.1982). The instant matter involves allegations that ALPA breached its duty in the negotiation of the collective bargaining agreement. In this context, the Supreme Court has defined the appropriate standard by which to judge

**9.** As but two examples of this, one plaintiff admitted in his lawsuit that *Monroe* was unrelated to the instant matter. The suspension of pension benefits during periods of re-employment, which plaintiffs claim raises an inference of age bias, is found in other United pension plans. Also, the suspension is not limited to suspension after the age sixty, but involves re-employment at any time after pension benefits have begun. It is also clear from the record that United was willing to fund the return of voluntary plan contributions and grant full service credit; this further undermines plaintiffs' claims of age discriminatory animus.

**10.** As additional support for dismissal of Count III, we observe that the ADEA provides that

It shall not be unlawful for an employer, employment agency, or labor organization—

\* \* \* \* \* \*

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual;

This section represents a narrow exception to the ADEA, and the burden of showing entitlement to this exemption is on the employer.

*Sexton v. Beatrice Foods Co.,* 630 F.2d 478, 486 (7th Cir.1980). Defendants have met this burden. Defendants have observed the terms of the plan, for the plan provisions permit the action taken by United. *Gonsalves v. Caterpillar Tractor Co.,* 634 F.2d 1065, 1067 (7th Cir. 1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981). The plan is bona fide, since it exists and pays benefits. *Smart v. Porter Paint Co.,* 630 F.2d 490, 494 (7th Cir. 1980). Even if we assume that amendments to the plan after the ADEA was enacted remove the instant matter from the rule of *United Air Lines v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977) (plans predating the enactment of the ADEA cannot be considered a subterfuge), United has presented sufficient evidence concerning the purpose of the plan and its amendments to demonstrate that the plan is not a subterfuge.

**11.** 45 U.S.C. § 182 provides that

The duties, requirements, penalties, benefits, and privileges prescribed and established by the provisions of sections 151 to 152 and 154 to 163 of this title shall apply to said carriers by air and their employees in the same manner and to the same extent as though such carriers and their employees were specifically included within the definition of "carrier" and "employee", respectively, in section 151 of this title.

a union's conduct. The fact that unions have a duty to

> represent all members of an appropriate [bargaining] unit requires them to make an honest effort to serve the interests of all of those members, without hostility to any.
>
> \* \* \* \* \* \*
>
> The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Ford Motor Co. v. Huffman,* 345 U.S. 330, 337–38, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953) (citations omitted). It is with these standards in mind that we consider plaintiffs' claims.[12]

Plaintiffs assert that whether ALPA has acted with good faith is an issue of fact which is inappropriate for summary judgment. Specifically, they argue that ALPA members who negotiated the collective bargaining agreement ignored two resolutions by the Master Executive Council ("MEC") to obtain the relief plaintiffs seek; ALPA negotiators also failed to learn of the actual cost of granting past service credit, and they learned that United planned to change the assumption rate, which would have paid for the benefit improvements, but failed to disclose that information. United, according to plaintiffs, is also liable for breach of ALPA's duty of fair representation by participating in the negotiations which caused plaintiffs' injuries, misrepresenting the cost of the relief sought and offering employment and increased benefits to ALPA officers.

 United and ALPA have met their burden of demonstrating the absence of material facts with respect to the issue of ALPA's good faith, thus entitling them to summary judgment. The evidence does not support plaintiffs' charges concerning the negotiators' rejection of the MEC's orders. The fact that the MEC ordered pension negotiators to seek credit for pre-1965 service in January, 1980, and February, 1981, must be viewed in the context of the negotiations between United and ALPA from 1979 through 1982. Plaintiffs proffer no evidence of ALPA's bad faith in connection with these negotiations sufficient to raise any factual issues. Rather, ALPA has demonstrated an absence of bad faith on its part.

Moreover, there is no evidence that ALPA misrepresented the cost of plaintiffs' proposal or failed to disclose material facts concerning the cost of the proposal. Plaintiffs attempt to develop these allegations by unsupported statements in their memorandum opposing summary judgment; there is no concrete evidence of misrepresentation, failure to inform the membership of benefit costs or of ALPA's position toward plaintiffs' proposals. Thus, there is no genuine issue for trial. *Posey v. Skyline Corp.,* 702 F.2d 102, 103, 105 (7th Cir.1983).

 With respect to United's liability for breach of the duty of fair representation, it is clear that an employer may be held liable along with a union for the injury suffered as a result of a breach of the duty of fair representation. *Jones v. Trans World Airlines, Inc.,* 495 F.2d 790, 798 (2d Cir.1974). Such lawsuits against the employer are generally brought pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. In the present case, plaintiffs assert that United was a party to ALPA's alleged breach of duty. We initially note that it would be conceptually anomalous to hold United liable with ALPA for breach of the duty of fair representation in light of our holding that ALPA did not breach this duty. *See Superczynski v.*

---

**12.** Count IV raises a statute of limitations issue as well. Plaintiffs assert that their cause of action accrued on June 24, 1982, when the parties United and ALPA signed a supplemental agreement concerning pension issues. Even if we apply the six-month limitation period in 29 U.S.C. § 160(b) to this matter, *Del Costello*

*v. International Brotherhood of Teamsters,* ——— U.S. ———, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983), the instant case was filed in May of 1982 and is within that period. We thus move to consider action of the merits of plaintiffs' claims.

*P.T.O. Services, Inc.,* 706 F.2d 200, 203–04 (7th Cir.1983). Furthermore, plaintiffs have not sufficiently demonstrated the existence of material factual issues concerning conspiracy or collusion between United and ALPA. United is correct in noting its statutory duty to bargain with ALPA, *NLRB v. American National Insurance Co.,* 343 U.S. 395, 402, 72 S.Ct. 824, 828, 96 L.Ed.2d 1027 (1952).

United's mere participation in collective bargaining negotiations with ALPA, in which plaintiffs' proposals were not realized, is not sufficient to hold United liable. Plaintiffs do not support their charge that United misrepresented the cost of the relief they sought. Testimony by United's actuary, moreover, clearly rebuts plaintiffs' allegations. Evidence of self dealing and collusion simply because United has hired former ALPA officials, many of whom would have in fact benefitted from plaintiffs' proposal, is similarly lacking. In short, plaintiffs have not demonstrated a factual basis upon which to infer the existence of collusion between United and ALPA, and for this reason summary judgment will be granted in defendants' favor as to Count IV.

---

For the foregoing reasons, plaintiffs' motion for class certification is denied, and defendants' motion for summary judgment is granted. It is so ordered.