Henry W. COWLISHAW, Plaintiff,

v.

ARMSTRONG RUBBER COMPANY, Defendant.

No. 76 C 884.

United States District Court, E. D. New York.

April 26, 1978.

Thomas J. Lilly, New York City (Doran, Colleran, O'Hara & Dunne, New York City, of counsel), for plaintiff.

William J. Doyle (Brotman & Dolin, New York City, and Wiggin & Dana, New Haven, Conn., of counsel), for defendant.

## MEMORANDUM and ORDER

DOOLING, District Judge.

Certain of the procedural and background data are set forth in the Memorandum and Order of January 28, 1977, and will not be repeated.

The question presented is whether defendant is entitled to summary judgment in this Age Discrimination in Employment Act of 1967 case.

Plaintiff, then aged 62 and a district sales manager of defendant earning $12,896 a year, was laid off effective June 30, 1974, with 60 days severance pay and $11/12$ths of three weeks vacation, and with a retirement allowance provided under the company's long established retirement plan. The plaintiff's retirement was made effective July 1, 1974; his entitlement, on the option that he exercised under the retirement plan, based on eleven years of continuous service with defendant, amounted to $86.79 a month guaranteed for a period of 20 years to himself or in the event of his death to a beneficiary named by plaintiff. Of the options available to plaintiff at his retirement date the largest monthly income would have been $109.17 payable for the life of plaintiff. Under defendant's retirement plan "Normal Retirement Date" is the first day of the month coincident with or next following a participant's sixty-fifth birthday. Under the plan (Section 5.01) each participant was "expected to retire on his normal retirement date", and

"may continue on in employment after said date only at the request of the Participant [*i. e.*, the employee] and with the consent of the Board of Directors of the Employer or the Committee."

The retirement plan, established in 1943, has, at least since 1963, provided for the voluntary or involuntary retirement of employees commencing at age fifty-five. The provision presently in effect (Section 5.04) provides in part:

"A Participant who shall have attained his fifty-fifth (55th) birthday and has completed at least ten (10) full years of continuous employment may retire or may be retired on any date earlier than his normal retirement date. Such a Participant, upon retirement shall be entitled to receive a monthly retirement benefit, the amount of which shall, at the Participant's election, consist of either: (1) a deferred monthly pension . . . or (2) an immediate monthly pension . . ."

The provision particularly applicable to plaintiff (Section 5.04, par. 4) reads:

"A Participant who shall have attained his sixty-second (62nd) birthday and has completed at least ten (10) full years of continuous employment may retire or may be retired on any date earlier than his normal retirement date. Such a Participant, upon retirement, shall be entitled to receive a monthly retirement benefit . . . based upon his years of employment and compensation to the date of his early retirement . . .."

Participation in the retirement plan was voluntary. The whole cost of the plan was borne by the defendant employer.

The plaintiff has served interrogatories and supplementary interrogatories which have been fully and carefully answered by the defendant. There is no ground for questioning the verity of the answers to the interrogatories or their completeness, but, strictly, they are not "binding" on plaintiff; he has not admitted their verity, or taken this occasion to argue any inferences that might be drawn from a careful analysis of the voluminous data that the defendant has produced. It should be said at once, however, that the data are such as to indicate that, if there is an issue of fact on the point that must be deter-

mined, the data go far to indicate that defendant would be able to show that plaintiff's termination was not motivated or controlled by his age but by other business factors not weighted by a consideration of defendant's age. It is an inference that defendant's termination might have been deferred in order to assure that his inevitably modest pension at least reflected eleven full years of retirement benefit credits. For example the answers indicate that defendant terminated seven district sales managers involuntarily during the year of defendant's termination, and that of these men the oldest had been born in 1906 and was therefore sixty-eight and the youngest had been born in 1948 and had been in the job for almost two years. The median age of the seven laid off or discharged was forty-seven. One man was twenty-five, three were in their forties, one was fifty-four and two were in their sixties. The man other than plaintiff who was in his sixties was sixty-eight and had been continued in service at his own request and with company permission after he attained normal retirement age.

Although the data indicate that on any view of the law defendant's prospects at a trial on the merits are very high, the question on the present motion is not that. It is whether, in the light of the statute and the controlling case law, the involuntary *early* retirement of an employee pursuant to the terms of a regularly established and long-standing pension plan on a pension that on no contingency of election among alternatives could much exceed one-tenth the employee's salary at retirement date can ever be found to be an unlawfully discriminatory discharge under ADEA.

*United Air Lines, Inc. v. McMann*, 1977, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402, does not settle the point. Whatever the *United* plan was in terms, it had in fact been administered as, and was considered by the Court of Appeals and the Supreme Court as, a plan requiring retirement at the age of sixty. No question of early retirement at the employer's option was presented.

The Court decided that a mandatory retirement age of sixty in a regularly adopted plan that antedated the ADEA was valid as applied to a person retired at the uniformly applied mandatory retirement age of sixty. The Court held that Section 623(f)(2) was meant not only to outlaw discrimination in the hiring of workers less than 65 years of age but too old to participate in an established pension plan by authorizing a *quoad hoc* discrimination in terms of hiring (98 S.Ct. at 450, fn. 8), but also to validate *bona fide* pension plans that provided for retirement before 65 without proving industrial justification for the age choice.[1] It must be inferred that the Court did not give consideration to the circum-

---

1. Congress through the 1978 Amendments to the ADEA has rejected that interpretation. The 1978 Amendments add at the end of Section 623(f)(2) as originally enacted the following:

"and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by Section 12(a) of this Act because of the age of such individual."

Section 12(a) states that the prohibitions of the Act are limited to individuals who are at least 40 but are less than 70 years of age.

The following excerpt from the Text of the Conference Committee Report makes clear the intent of the amendment, and the Conference Committee's view of the purpose of the original Section 623(f)(2):

"The conferees agree that the purpose of the amendment to section 4(f)(2) is to make absolutely clear one of the original purposes of this provision, namely, that the exception does not authorize an employer to require or permit involuntary retirement of an employee within the protected age group on account of age.

"In *McMann v. United Airlines* [434 U.S. 192], 98 S.Ct. 244 [444, 54 L.Ed.2d 402] (1977), the Supreme Court held to the contrary, reversing a decision reached by the Fourth Circuit Court of Appeals, 542 F.2d 217 (1976). The conferees specifically disagree with the Supreme Court's holding and reasoning in that case. Plan provisions in effect prior to the date of enactment are not exempt under Section 4(f)(2) by virtue of the fact that they antedate the act or these amendments." Joint Explanatory Statement of the Committee of Conference, reported in [1978] Lab.Rel.Rep. (BNA) Fair Empl. Prac. Manual, Supplement 341, Part 2, April 1, 1978, p. 58.

stance that in the particular industry an age below sixty may have been considered "a bona fide occupational qualification reasonably necessary to the normal operation of the particular business" within the meaning of Section 623(f)(1). The argument of Mr. Justice White, concurring, was that if United Air Lines' means of systematically discriminating against people when they reached sixty was to adopt a mandatory retirement plan, the fact that it adopted the plan before the statute was enacted would not prevent it from being discriminatory if it was so in objective fact. Mr. Justice White considered that the plan was safe from challenge because it was a good faith plan in that it provided substantial retirement allowances and the statute does not forbid involuntary retirements pursuant to a bona fide plan. Mr. Justice Stewart considered that since the plan was admittedly bona fide (in some sense of the word), it could not either be a subterfuge or an attempt to evade the Act, since it antedated the Act.

It is not possible to say that McMann definitely intended to adopt Zinger v. Blanchette, 3rd Cir. 1977, 549 F.2d 901. The majority did not deal with the point made by Mr. Justice Marshall, dissenting, that to permit retirement before sixty-five is to contemplate the possibility that on the same day that A is retired at sixty-two with impunity no matter what his job-fitness, B cannot be denied work because he is sixty-two if he is competent to do the work for which he applies, and is the only, or the best qualified applicant for the vacancy.

Brennan v. Taft Broadcasting Co. 5th Cir. 1974, 500 F.2d 212, found no violation of ADEA in Taft's retirement of an employee, Jones, at age sixty pursuant to the provisions of a plan which had a sixty year normal retirement date but which also provided for later retirement with company approval and for early retirement (at any time after age fifty) at Taft's option. The plan had been in existence for about seven years when Jones was retired and his benefits amounted to about $15,000. The Court found that the plan was a bona fide plan and that its date of adoption, three or four years before the statute was enacted, eliminated any notion that it was adopted as a subterfuge or evasion. The Court also concluded that having retired Jones under the plan, Taft was not required to hire him back again when he applied for work.

Zinger v. Blanchette, 3rd Cir. 1977, 549 F.2d 901 which, arguably, was cited with at least limited approval in McMann, dealt with an employer of Penn Central who was involuntarily retired one year before the customary retirement age of sixty-five. Zinger's early retirement cost him $834 a year in retirement allowance. He was a thirty-one year employee at the time of retirement, and, under the somewhat complicated railroad pension provisions applicable to employees of Zinger's class, he could be retired at the company's option at any time between his attaining age sixty and his normal retirement date. Zinger conceded that the Penn Central arrangements constituted a bona fide retirement plan but argued that it was nevertheless a subterfuge. The Court rejected the argument that the plan could not have been a subterfuge because it antedated the statute; it decided that the retirement was lawful because permitted by the statute which, in the Court's reading of the statute and the legislative history, intended to differentiate "discharge" from "retirement". The Court concluded that since the parties had conceded that the plan was a bona fide plan and the pension not unreasonable—"certainly not so small to brand the plan a subterfuge to evade the purposes of the Act" (549 F.2d at 909)—the early retirement at company option, although obviously a discrimination based on age, was not a violation of ADEA.

Rogers v. Exxon Research & Engineering Co., 3rd Cir. 1977, 550 F.2d 834, similarly dealt with a thirty-one year employee who was retired for medical reasons when he was about sixty years of age. A jury having been demanded, the trial court gave the case to the jury under an instruction that the ADEA "bans involuntary retirement before age 65 even under an otherwise bona fide plan, if age played any part in the decision." The Court of Appeals reversed saying (550 F.2d at 838)

"After careful study, we concluded that the Act does not prohibit involuntary retirement at age 60 with an adequate pension pursuant to a bona fide retirement program. *Zinger v. Blanchette* . . . . We observed that the age discrimination present in most involuntary retirement plans is generally not barred by the Act. Our holding in *Zinger* . . requires that the judgment here be vacated."

*Minton v. Whirlpool Corp.*, 569 F.2d 1012, 7th Cir. 1978, rejected a plaintiff employee's argument "that the defendant used its pension plan as a subterfuge to evade the purposes of the ADEA", on the ground that *McMann* held that a bona fide retirement plan which was in effect before the ADEA. Much of the force of *Minton* is dissipated by the sentence in footnote 2 reading

"During oral argument, the plaintiff's counsel conceded that for purposes of an ADEA violation no meaningful distinction could be drawn between involuntary early retirement as occurred in *Rogers, Zinger*, and the instant case and mandatory retirement at a specific age as occurred in *McMann*."

It would be somewhat difficult to say that *Zinger* or *Rogers* distinctly articulated the logic that equates mandatory retirement for all employees at a stated age less than 65 with selective retirements at less than 65 at the employer's option against the will of the employee unless the logic is to be found in the very general assertion in *Zinger* that in the view of the Congress discharge and retirement are different things, and that retirement on a substantial allowance under a regularly established pension plan is simply not a discharge,[2] or any sort of discrimination within ADEA.

*Hannan v. Chrysler Motors Corp.*, 443 F.Supp. 802, E.D.Mich.1978, dealt with a woman who was affected by a fifty percent cutback in the work force occasioned by a 1974–1975 drop in Chrysler sales. The employee was then 55, had been with the company for 24 years, had survived 10 previous lay-offs and rehirings, and, on the occasion of the cutback in issue, had not distinctly been released on the ground of her age, but had not been "selected" as part of the staff to be retained despite the cutback. However, on this occasion the plaintiff was placed on involuntary retired status rather than on "layoff." The evidence supported a conclusion that on this cutback Chrysler retired across the board all released employees who were over 55. The Court was clear that Chrysler's was a bona fide pension plan adopted long before the ADEA, and was not a subterfuge to evade the purposes of the Act. Rejecting *Brennan v. Taft Broadcasting Co.* and *Zinger v. Blanchette*, the Court took the view that

"Chrysler did more than passively *observe* the terms of its retirement plan in placing this plaintiff on involuntary retirement. The word 'observe' denotes a type of passive acquiescence that simply is not present when an employer has an arbitrary and unlimited option to place an employee on involuntary retirement to serve its immediate goals. We cannot assume that Congress chose the word 'observe' without reflection. . . . Chrysler went far beyond observing the terms of its plan. . . . Chrysler did not demonstrate that it passively observed the provision of its retirement plan at all times and applied it routinely to all employees, the circumstances presented to the Supreme Court in McMann. Therefore the defendant cannot avail itself of the exemption of § 623(f)(2)."

But none of the opinions in *McMann* clearly endorses such an interpretation of Congressional intent and Congress itself, in the 1978 Amendments to the ADEA has explicitly repudiated that view. See footnote one, *supra.*

**2.** Defendant argues that *McMann* adopted that assertion and, like *Zinger*, rests on the proposition that Congress intended by Section 623(f)(2) to differentiate retirement on pension from outright discharge and to exempt the former from the operation of the ADEA, and defendant points to *McMann's* repeated citations to the *Zinger* decision.

The Court said that the fact that a plan was bona fide and not a subterfuge to evade the purposes of the Act did not signify that it could not be used in a discriminatory manner. Said the Court—

"In deciding whether to permanently retire plaintiff or place her on a lay off status, Chrysler considered only age."

The Court observed that there was no evidence that any employees over 55 had been merely "laid off" subject to re-hiring. The Court rejected as unsupported by the plaintiff's work history the testimony of the Chrysler representatives that plaintiff's work had been found to have become unsatisfactory and that she would not have been rehired even if simply put on lay-off status. See also *Raymond v. Bendix Corp.*, E.D. Mich.1977, 15 FEP Cases 49.

■ It should be clear that an employer can discharge an employee even if he is in his early sixties if the employee's work has become unsatisfactory. But it is not to be supposed that such a dismissal would or should result in the loss of pension rights that might have been accruing to the employee over the years under the employer's pension plan. If the discharge is, however, expressly made for assertedly inadequate performance on the job, the circumstance that the former employee is entitled to and will receive a retirement allowance should not, it would seem, signify that the discharge is exempt from scrutiny because it represented action which also entailed an observance of the terms of a bona fide retirement plan which was not a subterfuge. It would, simply, have been a dismissal for cause, and, it may be supposed, could be the subject of a grievance. Again, if an employee who is over the minimum retirement age but well below the normal retirement age loses much of his capacity to work for reasons usually associated with premature old age, an employer's election to retire the employee would not appear to be a violation of the ADEA although manifestly an early and involuntary retirement by reason of age. Such retirements, related to the infirmities of age, would appear to present one of the justifications for pension planning, and for the incorporation in pension plans of early retirement provisions; they function as a means of recognizing age-related occasions for retirement and for transferring prematurely old employees from payroll to pension trust, a proper use of retirement facilities. On the facts as they were found by the Court in the *Chrysler* case, however, the retirement facility was abused and not used: the retirement system was used to cut payroll costs without reference to considerations relevant to retirement and pension planning, without reference to whether each of the employees should or should not have been retired, whether, that is, particular employees, because of a decline in their work capacity through age—premature aging—were unable to fulfill the demands of their job.

■ The statute does not enact any presumption that the discharge of a person between the ages of 40 and 65 is treated as discrimination by reason of age unless the employer shows the contrary. The burden of proof is on the employee to show that the discharge was based on age and not cause or some other licit consideration. What the *Chrysler* case appears to indicate is that, if the facts are as the Court found them in the *Chrysler* case, a *prima facie* instance of broadscale discharge solely because of age has been unearthed, and, that, whatever else Section 623(f)(2) is intended to accomplish, it can not be supposed to legitimate dismissals of entire age groups by reason of age without consideration of individual job fitness by taking advantage of early retirement options presumably designed to accommodate individual variances within a scheme centered on a stated normal retirement age. The very widespread inclusion in pension plans of early retirement provisions suggests that the use of forced early retirement to lighten payroll costs by forcing older, higher paid employees into retirement is very far from what the Congress had in mind when it said that it was not unlawful for an employer "to observe the terms of a bona fide . . . retirement . . . plan, which is not a subterfuge to evade the purposes of this chapter."

154

■ It does not at once follow that every individual forced early retirement must be shown by the employer to be due to premature aging of the employee, or to poor job performance meriting dismissal, or to some other factor not related to age and a preference for a younger and possibly cheaper employee in the same work. At the same time it must be concluded that Section 623(f)(2) does not mean that every involuntary early retirant under a pension plan who receives a substantial retirement allowance is automatically outside the ADEA. But certainly the employee must show that his termination was based on his age and not on its infirmities, or any other circumstance that would, without reference to age, make termination permissible.

While as indicated the data are very far from indicating that plaintiff could possibly sustain the burden of proof considered necessary, the nature of the case is such that for the reasons indicated the possibility that some such proof exists cannot be excluded on the present state of the record, and therefore summary judgment must be at this time denied.

It is accordingly

ORDERED that defendant's motion for summary judgment is denied.