Donald H. GONSALVES,
Plaintiff–Appellant,

v.

CATERPILLAR TRACTOR COMPANY,
INC., Defendant–Appellee.

No. 80–1615.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 26, 1980.

Decided Nov. 24, 1980.

Gerald D. Wahl, Detroit, Mich., for plaintiff–appellant.

Thomas G. Harvel, Peoria, Ill., for defendant–appellee.

Before PELL, Circuit Judge, SKELTON, Senior Judge,* and WOOD, Circuit Judge.

---

* The Honorable Byron G. Skelton, Senior Judge of the United States Court of Claims, sitting by designation.

HARLINGTON WOOD, Jr., Circuit Judge.

This case involves plaintiff Gonsalves's appeal from a district court ruling that granted defendant Caterpillar Tractor Company's (Caterpillar's) motion for summary judgment and dismissed Gonsalves's claim that Caterpillar violated the Age Discrimination in Employment Act of 1967 (ADEA), Pub.L.No. 90–202, 81 Stat. 602 (1967), 29 U.S.C. § 621 *et seq.*, when it terminated his employment in 1977 by involuntary retirement at the age of fifty–nine. The sole issue before us is whether ADEA as it stood in 1977 permitted an employer discretion to involuntarily retire an employee before the mandatory age specified in a long–standing pension agreement, where the express terms of the agreement allowed involuntary retirement. We affirm.

Section 4(a)(1) of ADEA provides that
It shall be unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age.

Section 4(f)(2) in 1977[1] provided that
It shall not be unlawful for an employer ... to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual.

29 U.S.C. § 623(f)(2).

On this appeal Gonsalves contends that the provisions of section 4(f)(2) apply only to the portions of an employer's pension plan that deals with mandatory retirement based on an employee's age. Gonsalves argues that since Caterpillar exercised some discretion when it retired him against his will before the mandatory age specified in Caterpillar's pension plan, section 4(f)(2)

does not shield the company from liability under ADEA.

■ As it appears from the facts pleaded and admitted before the district court when it granted the summary judgment motion, Caterpillar's pension plan provided for mandatory retirement at age sixty–six and early retirement at the employee's option after thirty years of service or at age sixty–two. The affidavit of Caterpillar's Employee Benefits Manager stated that Caterpillar's employees are subject to involuntary retirement after age fifty if they have ten years' credited service or after thirty years' credited service regardless of age. Although he now asserts that there are no documents in the record to support the Manager's explanation of the pension plan's terms, Gonsalves did not contest that point before the district court. In fact he presumed it to be true in his answer to Caterpillar's motion for summary judgment, and we accept the point as true for purposes of this appeal. *See Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 93 S.Ct. 1652, 36 L.Ed.2d 318 (1973).

The parties agree that the plan was a bona fide one since it actually paid out benefits. The plan was not a subterfuge within the meaning of ADEA since it was established decades before the passage of ADEA. *See United Airlines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977).

■ Gonsalves argues that Caterpillar was not passively "observing" the terms of the pension plan under section 4(f)(2) when it retired him involuntarily. Instead, he claims, Caterpillar was taking affirmative steps that impermissibly allowed age to become a potential factor in the retirement decision. Recent cases in this circuit have discussed when a company "observes" terms of a pension plan within the meaning of section 4(f)(2). *Sexton v. Beatrice Foods Co.*, 630 F.2d 478 (7th Cir. 1980); *Smart v. Porter Paint Co.*, 630 F.2d 490 (7th Cir.

---

1. Gonsalves argued at the district court level that 1978 amendments to ADEA should be given retroactive effect and should govern the present case. He has abandoned that contention on appeal.

1980). In considering the United States Supreme Court's decision in *United Airlines, Inc. v. McMann, supra,* the court in *Sexton* observed that "[b]oth the majority and dissenting opinions in McMann make sense only on the premise that the § 4(f)(2) exception is applicable only where the scope of involuntary termination is expressly provided for in an employer's retirement plan." Slip op. at 482. And in *Smart v. Porter Paint Co., supra,* the court restated the *Sexton* case's holding when it said that "for an employer to 'observe the terms' of a retirement plan when it forces an employee to retire, either the plan must contain a mandatory retirement age or the plan must grant the employer the right to force retirement at an appropriate age of his choosing." Slip op. at 7. In the case before us, plaintiff specifically acknowledged that "*Under the terms of* the Defendant's Retirement Income Plan, an employee is subject to involuntary retirement after attainment of age fifty (50) and ten (10) years of credited service...." (Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 7.) (Emphasis supplied.) In light of the *Sexton* and *Smart* cases, the record as it stands in this case shows that Caterpillar's retirement plan expressly provides for the scope of involuntary termination, that Caterpillar "observed" the terms of the plan and that, therefore, the section 4(f)(2) exception applies.

The *Sexton* and *Smart* opinions (and our decision in this case) are consistent with cases that indicate it is not a violation for the employer to retire an employee at the mandatory retirement age even though the employer could retain other employees past that age. *See e. g., United Airlines v. McMann,* 434 U.S. at 197 n. 4, 98 S.Ct. at 447 n. 4; *Brennan v. Taft Broadcasting Co.,* 500 F.2d 212 (5th Cir. 1974). In those situations, the employee knows the date at which he may be retired, like it or not, but also knows that his employer may exercise an option to retain his services past that time if the employee agrees. As the court observed in *Sexton,* "one of the paramount purposes of a retirement plan or program is to put employees on notice when they may

reasonably expect to be terminated, or retired." Slip op. at 489. Once the employer's pension plan puts the employee on notice of the time at which he may be retired, so long as that age is a reasonable one the employee is in the same situation as one who faces mandatory retirement only: the employee knows at what point the retirement decision may be made. Thus, "an employee having realistic notice that he may face early retirement may have an opportunity to make provision through savings, through the securing of a second job, and otherwise for the contingencies which he faces." *Sexton,* slip op. at 489. When the age for mandatory retirement arrives, the employee may be as loath to leave as he would have been had the employer exercised the earlier involuntary retirement option. The fact that the employee leaves against his will at an earlier time does not alter the similarity of the two situations of retirement, nor does it change the perception of fairness, *see Sexton,* slip op. at 488–89, involved in the employer's decision whether or not to retain the employee, so long as notice is given in both situations.

We acknowledge that there may be some greater opportunity for age considerations to enter the retirement decision when an early retirement system is involved. But section 4(f)(2) as it stood in 1977 permitted existing involuntary early retirement plans to continue in operation, so long as the terms of the plan were clear to employees. This view accords with decisions reached in this and other circuits on the application of the original version of ADEA to involuntary early retirement plans. *See Minton v. Whirlpool Corp.,* 569 F.2d 1012 (7th Cir. 1978); *Marshall v. Hawaiian Telephone Co.,* 575 F.2d 763 (9th Cir. 1978); *Zinger v. Blanchette,* 549 F.2d 901 (3d Cir. 1977). And the 1977 version of ADEA did not "require employers to bear the burden of showing a business or economic purpose to justify bona fide pre-existing plans." *McMann,* 434 U.S. at 203, 98 S.Ct. at 450.

Gonsalves cites three district court cases that have construed section 4(f)(2) not to cover retirements under pension plans simi-

lar to that involved in this case. We will discuss these cases in some detail because the parties to this suit indicated fundamental disagreement over the meaning and vitality of the cases, and because this circuit has not yet considered what impact, it any, the cases have on its conclusions regarding ADEA.[2]

In the first case cited by Gonsalves, *Marshall v. American Motors Corp.*, 475 F.Supp. 875 (E.D.Mich.1979), the district court judge held that with the passage of ADEA "one element of the employer's discretion was removed. That was the right to consider age as a relevant factor in the decision to terminate an employee." *Id.* at 880. The judge went on to acknowledge that ADEA broadly provided for an exception in the case of a bona fide plan that is not a subterfuge to evade the law. The judge then asserted that it would violate Congressional intent to let stand the discretionary aspect of the employer's bona fide plan. The district court did not articulate what specific aspects of "Congressional intent" overrode the plain language of section 4(f)(2), compare *Braunstein v. Commissioner*, 374 U.S. 65, 83 S.Ct. 1663, 10 L.Ed.2d 757 (1963), nor did the judge explain how even *mandatory* retirements upheld in the *McMann* case could survive the test she set forth, since under mandatory plans age is *the* "relevant factor" used to determine when an employee must retire. On that basis, and considering our previous discussion in this case, we find the district court's reasoning in the *American Motors* case unpersuasive, and decline Gonsalves's invitation to adopt the conclusions set out in that case.

In *Hannan v. Chrysler Motors Corp.*, 443 F.Supp. 802 (E.D.Mich.1978), the district court judge found that Chrysler violated ADEA when it retired Hannan as part of a blanket cutback by Chrysler of employees over fifty–five years of age. Chrysler had

argued that it was observing an involuntary retirement option in its pension plan. The district court judge in *Hannan* interpreted the section 4(f)(2) term "observe" to refer to an employer's passive acquiescence to mandatory retirement provisions of a pension plan, citing the dissent in *Brennan v. Taft Broadcasting Co.*, 500 F.2d 212 (5th Cir. 1974). The *Taft Broadcasting* majority upheld involuntary retirements under an employer's plan virtually identical to the one at issue in this case. Given this circuit's interpretation of the term "observe" as used in section 4(f)(2) and the absence of authority for the *Hannan* court's definition of the term, we find the reasoning of the *Hannan* case to be unpersuasive.[3]

In *Cowlishaw v. Armstrong Rubber Co.*, 450 F.Supp. 148 (E.D.N.Y.1978), the district court denied the employer's motion for summary judgment in a case that dealt with an involuntary early retirement. The district court judge described at some length several decisions involving ADEA, including the *McMann* and *Minton* cases, but did not explain how those decisions fit the judge's own conclusions in the case before him. Instead, the district court in *Cowlishaw*, apparently referring to *Hannan*, stated that the widespread use of existing early retirement provisions to lighten an employer's payroll costs "is very far from what the Congress had in mind when it" enacted section 4(f)(2). *Id.* at 153. The district court concluded that section 4(f)(2) does not automatically exclude from ADEA coverage every early retirement under the terms of pre–existing pension plans, but rather that in certain unspecified cases the employer need *not* show that early retirement was due to some factor unrelated to age. The district court then said that the employee must show that his termination *was* based solely on his age. The district court judge did not attempt to reconcile his conclusions as to the proof required from the employee under ADEA with his conclusions

---

**2.** The *Smart* case cited *Marshall v. American Motors Corp.*, 475 F.Supp. 875 (E.D.Mich. 1979), without discussion. *Smart*, slip op. at 494.

**3.** The district court opinion in another case cited by Gonsalves adopted the definition of

"observe" as used by the district court judge in *Hannan*. *Langman v. Western Electric Co.*, 488 F.Supp. 680 (S.D.N.Y.1980). For the reasons discussed above, we decline Gonsalves's invitation to adopt that definition.

that some plans are excluded from ADEA regardless of the showing made by an employer. Without stating what circumstances in the case before the court governed the ruling, the district court judge held that the plaintiff had established sufficient facts to warrant denial of the defendant's motion for summary judgment. Thus, the judge in *Cowlishaw* apparently rejected this circuit's decision in *Minton, supra,* but did not provide authority for his own conclusions. We find the *Cowlishaw* case unpersuasive in light of this circuit's recent discussion in the *Sexton* and *Smart* cases as to the showing necessary to allow an employer successfully to invoke section 4(f)(2) in the face of age discrimination claims brought under ADEA.

 Here it is undisputed that the terms of Caterpillar's bona fide pension plan allowed for early retirement of Gonsalves at Caterpillar's option. The plan was not a subterfuge to avoid the mandates of ADEA, and Gonsalves had notice of the terms of the plan. The district court's granting of Caterpillar's motion for summary judgment was consistent with ADEA as it stood in 1977 and is

Affirmed.