EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Plaintiff-Appellant, Cross-Appellee,

v.

FOX POINT–BAYSIDE SCHOOL DISTRICT, Defendant-Appellee, Cross-Appellant.

Nos. 84–1544, 84–1573.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 12, 1985.

Decided Aug. 29, 1985.

Colleen M. O'Connor, Appellate Services Div., Washington, D.C., for plaintiff-appellant, cross-appellee.

James R. Scott, Lindner, Honzik, Marsack, Hayman & Walsh, Milwaukee, Wis., for defendant-appellee, cross-appellant.

Before CUDAHY and COFFEY, Circuit Judges, and FAIRCHILD Senior Circuit Judge.

CUDAHY, Circuit Judge.

Grace Dummert taught for the defendant Fox Point-Bayside School District (the "School District") for about thirty years, from approximately 1948 until she was forced to retire in 1979. The Equal Employment Opportunity Commission (the "EEOC") brought this action under sections 16(c) and 17 of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 216(c) and 217, alleging that the School District had forced Mrs. Dummert to retire from her job as a teacher because of her age in violation of the Age Discrimination in Employment Act of 1967, as amended (the "ADEA"), 29 U.S.C. § 621 *et seq.* *See* 29 U.S.C. § 626(b). The parties filed cross motions for summary judgment as to liability. The district court, Hon. Myron L. Gordon, granted the Commission's motion and pursuant to an agreement of the parties referred the case to a magistrate for a determination of relief. The issue of whether the School District's action constituted a willful violation of the ADEA was tried to a jury, whose verdict in favor of the Commission is not challenged on appeal. The remaining issues were tried to the court.

Both parties have appealed. The only issues we need consider are whether the delay provision of the amendment to section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), effected by section 2 of the Age Discrimination in Employment Act Amendments of 1978, Pub.L. No. 95–256, 92 Stat. 189 (the "1978 Amendments Act"), is applicable, and, if so, whether the School District is protected by the former section 4(f)(2) of the ADEA as interpreted in *United Air Lines, Inc. v. McMann,* 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977). We conclude that the delay provision is applicable and that the School District's action is protected, and so reverse the district court.

## I.

The facts underlying the parties' motions for summary judgment are undisputed, and we adopt the district court's formulation of them:

Mrs. Grace Dummert, an elementary school teacher in the defendant school district for a number of years, reached the age of 65 on June 22, 1979. Several months prior to that date, Mrs. Dummert received a letter from Dellmont Lindbloom, superintendent of the school district, informing her that her teaching contract would probably not be renewed for the following school year. The basis of the superintendent's letter was the collectively bargained agreement between the school district and the Fox Point-Bayside Education Association, the union representing Mrs. Dummert and other teachers in area schools. Section 5.3.2 of the agreement contained the following provision:

"Tenure rights shall cease and any teacher shall be retired by the School Board at the end of the school year during which such teacher has attained his 65th birthday."

Mr. Lindbloom's letter, dated February 26, 1979, also informed Mrs. Dummert of her right to a conference with the school board on this matter. Mrs. Dummert did not want to retire at age 65, and she immediately requested a conference.

Prior to receiving Mr. Lindbloom's letter, Mrs. Dummert had become aware of the school district's intention to retire her, and she had contacted her association representative, Patrick Connolly, for assistance. On behalf of Mrs. Dummert, Mr. Connolly had written to the president of the school district, informing him that Mrs. Dummert did not wish to retire. In addition, Mr. Connolly had stated that the education association believed section 5.3.2 to be illegal, void, and unenforceable in light of the Age Discrimination in Employment Act and offered to release the defendant from its obligation to abide by that section of the agreement.

On the day following Mrs. Dummert's request for a conference regarding the non-renewal of her contract, a somewhat unfavorable evaluation was made of Mrs. Dummert by the principal of the school in which she taught. Several weeks later, Mrs. Dummert received final notice of the defendant's decision not to renew her teaching contract. Superintendent Lindbloom, the author of the notification letter, referred to her "relative level of teaching performance" as a significant factor in the board's decision and informed her of her right to request a hearing on the matter. In response to a letter from Mrs. Dummert, Mr. Lindbloom subsequently wrote to clarify his earlier letter, stating that the defendant's decision not to renew Mrs. Dummert's contract was based only on section 5.3.2, not on her performance. The defendant has retained this position throughout all further proceedings, and no other basis for Mrs. Dummert's termination is considered here.

At the hearing held by the school district on April 10, 1979, on the issue of Mrs. Dummert's retirement, the inquiry was limited to whether Mrs. Dummert fell within the mandatory retirement provision of the collective bargaining agreement. No presentation was permitted on the question of the legality of section 5.3.2 or on the defendant's decision not to

waive that provision as requested by the education association. After the hearing, the school board decided to retire Mrs. Dummert based solely on her age and so advised her in a letter dated April 11, 1979.

The Age Discrimination in Employment Act applies to individuals who are between 40 and 70 years of age, 29 U.S.C. § 631(a), and makes it unlawful for an employer to:

"... discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age...." 29 U.S.C. § 623(a)(1).

The defendant concedes that the plaintiff has established a prima facie case of age discrimination, but argues that liability is precluded by the delayed effective date of the 1978 amendments to the ADEA. The issue before the court is whether, at the time the defendant retired Mrs. Dummert, section 623(f)(2) of Title 29, United States Code, was applicable in its original form or whether the 1978 amendments applied.

Dist.Ct.Op. at 1–3 (May 5, 1982).

## II.

Prior to the 1978 Amendments Act, the ADEA prohibited discrimination against employees between forty and sixty-five, but in section 4(f)(2), 29 U.S.C. § 623(f)(2) (1975), provided:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

. . . .

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this [Act], except that no such employee benefit plan shall excuse the failure to hire any individual.

In *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 98 S.Ct. 444, 54 L.Ed.2d 402 (1977), the Supreme Court interpreted this provision as permitting forced retirement of an employee under 65 pursuant to a mandatory retirement provision of a bona fide retirement plan. On April 6, 1978, Congress enacted the 1978 Amendments Act, Pub.L. No. 95–256, 92 Stat. 189, effectively overruling *McMann*. *See Graczyk v. United Steelworkers of America*, 763 F.2d 256, 258 (7th Cir.1985). Section 3(a) of the 1978 Amendments Act amended section 12 of the ADEA, 29 U.S.C. § 631, to raise the age of protection from 65 to 70 years. This amendment became effective on January 1, 1979, prior to Mrs. Dummert's forced retirement. In addition, section 4(f)(2) of the ADEA, 29 U.S.C. § 623(f)(2), was amended so as to overrule *McMann*. As amended by section 2(a) of the 1978 Amendments Act, section 4(f)(2) provides:

(f) It shall not be unlawful for an employer, employment agency, or labor organization—

. . . .

(2) to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this [Act], except that no such employee benefit plan shall excuse the failure to hire any individual, *and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual.*

29 U.S.C. § 623(f)(2) (emphasis supplied). The italicized portion is that added by the 1978 Amendments Act.

The effective date of the amendment to section 4(f)(2) of the ADEA is set out in section 2(b) of the 1978 Amendments Act (the "delay provision"), which provides:

The amendment made by subsection (a) of this section [amending section 4(f)(2), 29 U.S.C. § 623(f)(2), to overrule *McMann*] shall take effect on the date of enactment of this Act [April 6, 1978], except that, in the case of employees covered by a collective bargaining agree-

ment which is in effect on September 1, 1977, which was entered into by a labor organization (as defined by section 6(d)(4) of the Fair Labor Standards Act of 1938 [29 U.S.C. § 206(d)(4)]), and which would otherwise be prohibited by the amendment made by section 3(a) of this Act [amending ADEA § 12, 29 U.S.C. § 631, to raise the age of protection from 65 to 70], the amendment made by subsection (a) of this section shall take effect upon the termination of such agreement or on January 1, 1980, whichever occurs first.

1978 Amendments Act § 2(b), 92 Stat. at 189; *see Graczyk,* 763 F.2d at 258.

If the delay provision is not applicable here, then both the extension of the protected age and the overruling of *McMann* effected by the 1978 Amendments Act would be applicable. Since Mrs. Dummert was less than 70 and was forced to retire because of her age, the School District would have violated the ADEA, even if the forced retirement was pursuant to an otherwise valid retirement plan. Under these circumstances the EEOC would be entitled to summary judgment, and the School District concedes as much. If the delay provision does apply, Mrs. Dummert is still a protected employee, and the School District will be liable unless its action is permissible under the old section 4(f)(2) as interpreted in *McMann.*

### III.

■ The delay provision (section 2(b) of the 1978 Amendments Act) imposes three requirements which must be met in order for a collective bargaining agreement to be such that it will delay the effective date of the amendment overruling *McMann.* As this court has recently stated, the collective

bargaining agreement "must be (1) 'in effect on September 1, 1977,' (2) 'entered into by a labor organization,' and (3) 'otherwise prohibited by the amendment' of 29 U.S.C. § 631." *Graczyk,* 763 F.2d at 261 (quoting § 2(b)) (emphasis omitted); *see also id.* at 261 n. 6; *EEOC v. United Air Lines, Inc.,* 755 F.2d 94, 95–97 (7th Cir.1985).

With respect to the first requirement, at the time that Mrs. Dummert was forced to retire, the School District and the teachers' association were parties to a collective bargaining agreement. That agreement, pursuant to which Mrs. Dummert was forced to retire, was in effect from July 1, 1977, through June 30, 1979. (Letter of March 30, 1979, from Mrs. Dummert accompanying original employment discrimination complaint. *See* Record Items 7 & 8.) The second requirement is also satisfied, for the Fox Point-Bayside Education Association is a "labor organization" as defined in section 6(d)(4) of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206(d)(4).[1] Third, the agreement (or perhaps more properly the actions it authorizes) would otherwise be prohibited by the amendment of 29 U.S.C. § 631. That amendment raised the age of protection from 65 to 70, effective January 1, 1979. Pursuant to a contract provision mandating retirement at 65, Mrs. Dummert was forced to resign in the spring of 1979 because she had reached the age of 65. This would have been permissible prior to the amendments extending the age of protection and overruling *McMann* because ADEA protection stopped at 65, but because it forces the employee to retire before age 70 it would be prohibited by the amended section 631 but for *McMann,* and so is "otherwise prohibited by the amendment" of that section. *See EEOC v. United Air Lines, Inc.,* 755 F.2d at 96–97.[2]

---

1. A labor organization is defined as "any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work." 29 U.S.C. § 206(d)(4).

2. The delay provision does not apply to plans which were made illegal only by the overruling of *McMann,* that is, plans which required retirement at an age earlier than 65. For such plans the amendment became effective on the date of enactment of the 1978 Amendments Act, April 6, 1978. The delay provision provides that for plans which require retirement at an age between 65 and 69 but which do not satisfy the

We conclude that the delay provision applies to the 1977–79 agreement between the School District and the Education Association. Therefore we must determine if the provision pursuant to which Mrs. Dummert was forcibly retired satisfies the pre-amendment section 4(f)(2), as interpreted by *McMann* and its progeny.

### IV.

In order to establish a defense under the old section 4(f)(2), the School District "must demonstrate the existence of three elements: (1) the [School District] must have been observing the terms (2) of a bona fide retirement plan (3) which is not a subter-

three requirements, the effective date of the amendment will be January 1, 1979, the same date the amendment raising the age of protection became effective.

**3.** The district court's actual chain of reasoning was a bit more complicated, for it held specifically that the *delay provision* was not applicable, and so the amendment overruling *McMann* applied to this case. Dist.Ct.Op. at 5–7. The district court reasoned that the delay provision applied "only where a retirement plan *contained within* an appropriate collective bargaining agreement requires or permits involuntary retirement." *Id.* at 6 (emphasis added). The court based its reading of the delay provision on a passage in the legislative history and the structure of the 1978 Amendments Act. *Id.* at 5–6. *See* S.Rep. No. 493, 95th Cong., 2d Sess. 11, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 514. The court determined that the retirement plan was not contained in the collective bargaining agreement. It believed that the statutory State Teachers Retirement System (*see* text *infra*) was the whole applicable retirement plan, and that the STRS was not included in the collective bargaining agreement. Since the retirement plan was not "contained within the collective bargaining agreement" (pursuant to section 5.3.2 of which Mrs. Dummert was forced to retire) the district court held that the delay provision was not applicable.

We do not believe this is a correct analysis of the delay provision. The Senate Report does state that the delay provision applies to "mandatory retirement policies at ages 65 through 69 in *employee benefit plans and seniority systems contained in* collectively bargained agreements in effect on September 1, 1977," and that the "postponed effective date would only apply to pension plans which were negotiated as a part of a collective bargaining agreement." S.Rep. No. 493, 95th Cong., 2d Sess. 11, *reprinted in* 1978 U.S.Code Cong. & Ad.News 504, 514 (empha-

fuge to evade the purposes of the ADEA." *Smart v. Porter Paint Co.*, 630 F.2d 490, 493 (7th Cir.1980) (citing, *inter alia*, *McMann*). *See EEOC v. Westinghouse Electric Corp.*, 725 F.2d 211, 223 (3d Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); *Gonsalves v. Caterpillar Tractor Co.*, 634 F.2d 1065, 1066 (7th Cir.1980), *cert. denied,* 451 U.S. 920, 101 S.Ct. 1999, 68 L.Ed.2d 312 (1981). *Cf. EEOC v. Borden's Inc.*, 724 F.2d 1390, 1395 & n. 3 (9th Cir.1984). The district court held, in effect, that the School District had not been observing the terms of a retirement plan, and so granted summary judgment for the EEOC.[3]

sis added). But the Senate Report also states that the purpose of the delay provision is to "provide the maximum deference to" contracts negotiated between management and labor. *Id.* The House Conference Report states that the Senate *delay provision applies to* mandatory retirement pursuant to "bona fide employee benefit plans or seniority systems *provided by* collective bargaining agreements in effect on September 1, 1977." H.R.Conf.Rep. No. 950, 95th Cong., 2d Sess. 8, *reprinted in* 1978 U.S.Code Cong. & Ad.News 528, 529 (emphasis added). The actual delay provision, however, does not include either the reference to employee benefit plans or seniority systems or the "contained within" or "provided by" language, and its language is both clear and unambiguous. *See supra* at 1297–1298.

The district court, in its interpretation of the delay provision, also relied on the presumption that exceptions to broad remedial statutes must be narrowly construed. Dist.Ct.Op. at 6. We have recently considered this argument:

It could, of course, be argued that the ADEA is a "remedial" provision and, therefore, that any exception, including that of § 2(b), must be narrowly construed. As a general matter, the ADEA may benefit from the presumptions associated with a "remedial" statute. This characterization, however, does not invest the Act with a sort of talismanic quality so that all other canons of statutory construction will be disregarded. Indeed, in this particular case, where Congress sought to extend "maximum deference" to collective-bargaining agreements, the force of the presumptions in favor of such agreements at least equals, and perhaps overwhelms, the force of the presumptions associated with a "remedial" statute. Stated in another manner, a narrow construction of the § 2(b) exemption is inconsistent with the express desire of the legislature to accord highly deferential treatment to labor agreements.

Until 1982 the terms of employment of Wisconsin public school teachers were governed in part by the State Teachers Retirement System, Wis.Stats. ch. 42 (1979–80), *repealed by* 1981 Wis.Laws ch. 96 § 33 (effective January 1, 1982). The State Teachers Retirement System (the "STRS") was basically a defined-contribution plan for providing retirement and disability benefits to teachers in Wisconsin. The statute set the types of benefits available for a member, and the contributions to be made for him or her. The contributions took two forms. First, the teacher and the state each made a required contribution equal to a certain percentage of the teacher's compensation. § 42.40. Second, the teacher or any person on his or her behalf (which we presume would include a school board) could make additional contributions to the teacher's account. § 42.40(3). Further, the employer could agree to pay the teacher's required contribution. § 42.40(9). The STRS also provided that normal retirement was to be at 65, § 42.245(2)(b)2.a., and from 1980 on, permitted an employer "under policies established or agreed to by the employer" to require a teacher to retire at age 65 (unless prohibited by federal law). § 42.531 (added by 1979 Wis.Laws, ch. 221).[4]

The statute required that all collective bargaining agreements specify that they were subject to the STRS. § 42.42(1). The STRS clearly contemplated that certain of its provisions (*e.g.* who was to make a teacher's required contribution or whether there was to be any additional contribution) were to be subject to collective bargaining. *See Joint School District No. 1 v. United States*, 577 F.2d 1089, 1090–91 (7th Cir. 1978); 59 Op.Atty.Gen.Wis. 186 (1970). It also explicitly recognized the duty of a school board to collectively bargain over certain aspects of the STRS. § 42.-245(2)(bm). The Attorney General of Wisconsin has issued an opinion stating that school boards have authority to include in teacher contracts retirement plans supplemental to those provided by statute, including early retirement in exchange for increased compensation, and that such are proper subjects of collective bargaining. 63 Op.Att'y Gen.Wis. 16 (1974).

The 1977–79 collective bargaining agreement between the school district and the teachers' association contained numerous provisions relating to retirement. It provided that the Board would pay a certain proportion of the required contribution to the STRS. § 6.6.3. It provided for continuing life insurance coverage after retirement, § 6.6.1, and also for continued health plan coverage after retirement, § 6.6.2. The agreement also provided for teacher purchase of tax sheltered annuities. § 6.7. Finally, the agreement provided a voluntary early retirement plan, § 6.6.4, and, of

---

Thus, in view of the language of § 2(b) and the strong legislative expressions of the need to accord "maximum deference" to collective-bargaining agreements, we conclude that Congress intended that any doubtful situation be resolved in favor of upholding such agreements. Absent an explicit declaration from Congress to the contrary, we cannot impute to the legislature an intent in § 2(b) to disregard terms such as those under consideration that are the legitimate result of the collective-bargaining process. Indeed, this court acknowledged in *EEOC v. County of Calumet*, 686 F.2d 1249, 1257 (7th Cir.1982), Congress's recognition that "valuable consideration is sometimes given in collective bargaining for concessions which may be prohibited under the ADEA," and that Congress took account of the possible loss of bargain in § 2(b).

*Graczyk,* 763 F.2d at 262–63 (citations and footnote omitted).

However, the district court did focus on the crucial issue of whether section 5.3.2 was part of the retirement plan of the Fox Point-Bayside School District. The EEOC argues that in effect the district court merely compressed the two stages of the analysis, for the district court's "contained within" approach to the delay provision issue is substantially equivalent to the "observing the terms of a retirement plan" element of the *McMann* analysis. EEOC Responsive Br. at 7. We agree that the district court was in effect on the right track, though not that it reached the right result.

4. The prior version of § 42.531 specified that teachers "in the classified service of the state" would be retired at the end of the month in which they turned 65 unless the appointing officer, board, or commission authorized in writing for the teacher to continue. Wis.Stats. § 42.531 (1977).

course, for mandatory retirement at age 65, § 5.3.2.

The School District argues that the employee benefit plan in regard to retirement in effect in the spring of 1979 was the comprehensive package made up of both the STRS and the provisions of the 1977–79 Agreement. Since the mandatory retirement provision was part of the comprehensive plan and was collectively bargained, the School District concludes that forced retirement pursuant to the provision is protected by section 4(f)(2) and *McMann.* We agree. The argument of the EEOC, that the STRS retirement plan and the collectively bargained agreement were separate and independent, and so forced retirement pursuant to the latter was not pursuant to the former and is therefore not protected by section 4(f)(2), is not persuasive.

■ The EEOC contends that the collective bargaining agreement was not "part of the state retirement plan in any meaningful sense." EEOC Response Br. at 8. Whether or not this statement is true, or itself even meaningful, it certainly begs the question. Obviously a collective bargaining agreement cannot incorporate itself into (or amend) a statute. But one can supplement a statutory retirement scheme, both by determining who pays required contributions and by covering subjects not covered in the statutory framework. If so, then the retirement plan under which the teachers are employed is made up of both the statutorily and contractually based provisions. Our prior decisions do not require that, for the plan to afford protection to the employer under section 4(f)(2), all portions of the plan be incorporated into one document. *See Graczyk,* 763 F.2d at 257 n. 1 & 260 n. 6.

Nor do we believe the mandatory retirement provision can be said to be "peripheral" or "marginally related" to the STRS portion of the plan. A provision for mandatory retirement is by its very nature central to a retirement plan. A prospective teacher considering offers of employment from two school districts certainly would not consider such a provision peripheral to an evaluation of the retirement plans offered by the two districts. *Cf. Sexton v. Beatrice Foods Co.,* 630 F.2d 478, 483, 489 (7th Cir.1980). We also cannot ascribe any weight to the fact that the mandatory retirement provision is located in Article V ("Conditions of Employment," in section 5.3 titled "Tenure Rights") rather than in Article VI ("Salary and Benefits," in section 6.6 titled "Teacher Retirement") of the collective bargaining agreement. Section 5.3.2 is captioned "Retirement" and so labeled in the table of contents of the agreement. The provision states that tenure ceases and the teacher will be retired at age 65. Certainly it could have been located in Article VI, or divided into two sections, one in each article, but the present location is just as logical as those alternatives. Further, the provision is not hidden away but clearly labeled and located in one of the obvious places one would look for a provision regarding how long one would be able to teach. *See Sexton v. Beatrice Foods Co.,* 630 F.2d at 483, 489.[5]

■ The district court found the "most significant factor" to be that the STRS was not collectively bargained. But that is irrelevant, because neither section 4(f)(2) nor *McMann* require that the employee benefit plan be collectively bargained. *See Alford v. City of Lubbock, Texas,* 664 F.2d 1263, 1267–71 (5th Cir.) (forced retirement without pension benefits pursuant to Texas Municipal Retirement System, Tex.Rev.Civ. Stat.Ann. art. 6243h, § VII(1)(a) (Vernon 1970 & Supp.1980–1981), not a violation of § 4(f)(2)), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982). *See also Patterson v. Independent School District*

---

**5.** Even if we were to accept the argument that its location shows that § 5.3.2 was not part of the retirement plan, it is not clear this would help the EEOC. Section 4(f)(2) allows employers to act pursuant to seniority systems as well as pursuant to employee benefit plans such as retirement plans. Tenure is a form of seniority (though only a two-valued system of seniority) and thus by retiring Mrs. Dummert pursuant to § 5.3.2, the School District would appear to be "observ[ing] the terms of a bona fide seniority system," and so protected by § 4(f)(2).

*No. 709,* 742 F.2d 465 (8th Cir.1984) (voluntary early retirement plan which reduced benefits to older teachers, set up by Minnesota statute and also by collective bargaining agreement, was bona fide employee benefit plan and exempt under § 4(f)(2)). Further, the fact that the STRS was not collectively bargained is not relevant to whether section 5.3.2 was collectively bargained (it clearly was) nor does it help determine whether the STRS alone makes up the retirement plan under which the School District's teachers worked.

The EEOC's reliance on *EEOC v. Borden's, Inc.,* 724 F.2d 1390 (9th Cir.1984); *EEOC v. Westinghouse Electric Corp.,* 725 F.2d 211 (3d Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); and *Alford v. City of Lubbock, Texas,* 664 F.2d 1263, 1271–72 (5th Cir.), *cert. denied,* 456 U.S. 975, 102 S.Ct. 2239, 72 L.Ed.2d 848 (1982), is misplaced. In those cases the employer attempted to base its denial of benefits such as severance pay, layoff pay and the cash value of accrued vacation or sick days on the fact that the employee was also eligible for forced retirement (or had been forced to retire). The courts reasoned that because the costs of these benefits bore no relation to the age of the employee they were not part of a plan which was of the type which section 4(f)(2) insulated. *EEOC v. Borden's, Inc.,* 724 F.2d at 1396; *EEOC v. Westinghouse Electric Corp.,* 725 F.2d at 224–25; *Alford v. City of Lubbock,* 664 F.2d at 1271–73. These cases do not hold that a mandatory retirement provision is separate from a retirement plan, and the reasoning they employ does not help in analyzing that question. Indeed, since the cost of employing someone and providing insurance and retirement benefits can vary with the age of the employee, the reasoning of these cases indicates that the provision is of the type that was meant to be protected.

■ We agree that as an exception to a remedial statute section 4(f)(2) is to be construed narrowly, and that the burden is on the School District to establish the exception. *Sexton v. Beatrice Foods Co.,* 630 F.2d at 486. *See Monroe v. United Air Lines, Inc.,* 736 F.2d 394, 408 (7th Cir. 1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1356, 1357, 84 L.Ed.2d 378 (1985). *Cf. Graczyk,* 763 F.2d at 262–63 (quoted *supra* in n. 3). However, that presumption should not lead us to take a skewed view of the retirement plan before us or to ignore the "maximum deference" Congress intended to give to collectively bargained contracts even though they contained mandatory retirement provisions. *See supra* at n. 3; *Graczyk,* 763 F.2d at 262–63. We conclude that the School District has established that it was observing the terms of its retirement plan when it forced Mrs. Dummert to retire.

■ The other two elements of the *McMann* test need not delay us long. A plan is said to be "bona fide" so long as it pays substantial benefits. *EEOC v. Borden's, Inc.,* 724 F.2d at 1395; *Smart v. Porter Paint Co.,* 630 F.2d at 494; *see Gonsalves v. Caterpillar Tractor Co.,* 634 F.2d at 1066; *accord United Air Lines, Inc. v. McMann,* 434 U.S. at 194 & n. 2, 203. It is obvious from the face of the STRS and the collective bargaining agreement that the retirement plan for the School District's teachers pays substantial benefits and so is a "bona fide" plan. The EEOC does not argue otherwise.

■ We also believe that the plan is not a subterfuge for avoiding the requirements of the ADEA. A plan which was adopted prior to 1967, the date of the ADEA, is presumptively not a subterfuge to avoid the act's requirements. *Gonsalves v. Caterpillar Tractor Co.,* 634 F.2d at 1066; *see McMann,* 434 U.S. at 203; *Smart v. Porter Paint Co.,* 630 F.2d at 495. Apparently the mandatory retirement provision was in existence since 1967 at the latest. School Dist.Br. at 14.[6.] At the least, the EEOC

6. The School District cites us to its brief below in support of summary judgment, which is not included in the record before us. Nor has the

School District, by neglecting to include a complete copy of the collective bargaining agreement, made our task easier. A party should

does not argue otherwise. But even if the provision was first adopted in the collective bargaining agreement before us, we believe it would be presumptively valid. In *McMann* the Supreme Court reasoned that since the plan there was adopted long before the ADEA was enacted, the plan could not have been an attempt to evade the Act. *McMann*, 434 U.S. at 203; *see Smart v. Porter Paint Co.*, 630 F.2d at 495. Here, at the time the collective bargaining agreement was entered (1977) the mandatory retirement provision did not violate the ADEA because that act did not protect 65 year old workers. It was only a year later, after the 1978 Amendments Act was passed raising the age of protection to 70, that a provision for mandatory retirement at 65 could be a subterfuge to avoid the requirements of the ADEA. Since the provision was adopted before the 1978 Amendments Act—indeed, before the cut off date provided by Congress in the delay provision [7]—we believe that it is presumptively not a subterfuge to evade the requirements of the ADEA.

### V.

We conclude that the preamendment version of section 4(f)(2) applies to this case, and that the School District has established that it observed the terms of a bona fide retirement plan that was not a subterfuge when it forced Mrs. Dummert to retire. Therefore its action is protected by section 4(f)(2), and summary judgment for the School District on liability should have been granted. Because of our conclusion on liability, we need not consider any of the other issues raised by the cross appeals, all of which concern the conduct of the damages trial and the calculation of damages. We express no opinion on any of those issues.

For the above reasons, the order of the district court granting the EEOC's motion for summary judgment on liability and de-

nying the School District's motion for summary judgment on liability is REVERSED. Costs are awarded to the School District in both appeals.

---

take care to make sure that everything we might need to rely upon to find support for its position is included in the record.

7. Indeed, Congress recognized that collectively bargained agreements in effect on September 1, 1977, "were negotiated in good faith." S.REP. No. 493, 95th Cong., 2d Sess. 11, *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS 504, 514.